960 So.2d 513 (2006)
Phillip Michael SEYMOUR, Appellant,
v.
Karen Ellen SEYMOUR, Appellee.
No. 2005-CA-00668-COA.
Court of Appeals of Mississippi.
October 31, 2006.
Rehearing Denied April 3, 2007.
*515 William E. Tisdale, attorney for appellant.
*516 Thomas Wright Teel, Biloxi, attorney for appellee.
Before KING, C.J., CHANDLER and ROBERTS, JJ.
KING, C.J., for the Court.
¶ 1. The Harrison County Chancery Court granted Karen Ellen Seymour a fault-based divorce from Phillip Michael Seymour on the grounds of adultery. Phillip appeals the judgment, raising the following issues, which we quote verbatim.
I. THE TRIAL COURT ERRED AND EXCEEDED THE STATUTORY GUIDELINES FOR CHILD SUPPORT BY REQUIRING THE APPELLANT TO PAY CHILD SUPPORT AND ONE-HALF OF THE MINOR CHILDREN'S PAROCHIAL SCHOOL TUITION.
II. THE TRIAL COURT ERRED BY NOT DIVIDING THE SEYMOUR & SONS SEAFOOD, INC. STOCK EQUALLY AS PER THE STIPULATION OF THE PARTIES.
III. THE TRIAL COURT ERRED IN VALUING THE SEYMOUR & SONS SEAFOOD, INC. STOCK AND ASSIGNING THE FULL VALUE OF SAME TO THE APPELLANT WHEN DIVIDING THE MARITAL ASSETS.
IV. THE TRIAL COURT ERRED IN DIVIDING THE MARITAL ASSETS OF THE PARTIES.
V. THE TRIAL COURT ERRED BY GRANTING EXCESSIVE PERIODIC ALIMONY TO THE APPELLEE.
VI. THE TRIAL COURT ERRED IN AWARDING ATTORNEY'S FEES TO THE APPELLEE.

FACTS
¶ 2. Karen and Phillip were married on December 9, 1989. Karen gave birth to their first child in 1991. In 1994, the Seymours welcomed twin daughters. All three girls attend parochial school.
¶ 3. Phillip is treasurer and part owner of Seymour & Sons Seafood, Inc. (Seymour & Sons), a seafood processing business in D'Iberville, Mississippi. He also earns extra income as a plumber. The chancellor found that Phillip earns in excess of $50,000 per year. Karen is a homemaker and a secretary at Sacred Heart Elementary School, where she earns $18,000 per year. Sacred Heart is also where the twins attend school.
¶ 4. Phillip admitted to having affairs with two different women in 1997. Thereafter, he and Karen began attending marriage counseling. However, in 2003, Phillip began having another affair with his best friend's wife, which resulted in his separation from Karen. On November 3, 2003, Karen filed for divorce. The divorce hearing was held on November 15 and 16, 2004, and the judgment of divorce was entered on February 22, 2005. The chancellor awarded Karen legal and physical custody of the three minor children and ordered Phillip to pay $800 per month in child support. Phillip was also ordered to pay one-half of the children's tuition and to maintain their health insurance. The court divided and distributed the marital property, awarded Karen $1,000 per month in periodic alimony, and awarded Karen $2,000 in attorney's fees.

ANALYSIS

Standard of Review
¶ 5. A chancellor's findings, especially in the areas of divorce and child support, will not be disturbed on appeal unless manifestly *517 erroneous. Fancher v. Pell, 831 So.2d 1137, 1140(¶ 15) (Miss.2002).
I. THE TRIAL COURT ERRED AND EXCEEDED THE STATUTORY GUIDELINES FOR CHILD SUPPORT BY REQUIRING THE APPELLANT TO PAY CHILD SUPPORT AND ONE-HALF OF THE MINOR CHILDREN'S PAROCHIAL SCHOOL TUITION.
¶ 6. Phillip argues that the court's order requiring him to pay $800 per month in child support plus one-half of the children's parochial school tuition, $262 per month, exceeds the statutory guidelines. The child support guidelines provide that twenty-two percent of the non-custodial parent's adjusted gross income is an appropriate award for the support of three children. Miss.Code Ann. § 49-19-101(Rev.2003). The chancellor determined that Phillip's adjusted gross income was $3,637 per month based on his 2004 tax filings. This figure does not include the unreported income Phillip earns from plumbing jobs, but was the figure used to calculate child support in the amount of $800 per month.
¶ 7. School tuition is considered a part of child support. Halle v. Harper, 869 So.2d 439, 441(¶ 8) (Miss.Ct.App.2004) (citing Southerland v. Southerland, 816 So.2d 1004, 1006(¶ 11) (Miss.2002)). An order requiring school tuition payment must be reasonable in light of the parents' income. Id. Since Phillip was ordered to pay twenty-two percent of his reported adjusted gross income plus one-half of the girls' parochial school tuition, the chancellor was required to make specific findings of fact to justify deviation from the child support guidelines. Id. (citing Miss.Code Ann. § 43-19-101(2) (Rev.2004)). In the order denying the Phillip's motion to reconsider, the chancellor made the following findings to support deviation from the child support guidelines: (1) Phillip earns in excess of $50,000 per year when bonuses and cash income received from plumbing jobs are included, (2) the order to pay $800 per month in child support was based only on Phillip's reported income from Seymour & Sons Seafood, (3) the children had always attended parochial school, and (4) Phillip's mistress is a teacher at the public school where the twins would attend if they were taken out of parochial school. The chancellor found that were the twins required to attend the same school in which Phillip's mistress taught, it would cause undue stress and conflict for them.
¶ 8. We find that the chancellor's findings were sufficient to support an award of twenty-two percent of Phillip's reported adjusted gross income plus one-half of the children's parochial school tuition. This issue fails.
II. THE TRIAL COURT ERRED BY NOT DIVIDING THE SEYMOUR & SONS SEAFOOD, INC. STOCK EQUALLY AS PER THE STIPULATION OF THE PARTIES.
III. THE TRIAL COURT ERRED IN VALUING THE SEYMOUR & SONS SEAFOOD, INC. STOCK AND ASSIGNING THE FULL VALUE OF SAME TO THE APPELLANT WHEN DIVIDING THE MARITAL ASSETS.
¶ 9. Seymour & Sons was incorporated in 1984. Phillip owns 11,000 shares of stock in Seymour & Sons. Although Phillip is the treasurer of Seymour & Sons, he presented no evidence at trial to show the value of the company, the value of company stock, nor the number of outstanding shares. However, in his Rule 8.05 financial statement, Phillip estimated that his 11,000 shares were worth *518 $157,500. At the beginning of trial, Phillip testified that he was willing to give Karen one-half of the stock regardless of its value. Karen's attorney then stated that if Phillip was stipulating that he would given Karen half of the shares, they would accept. The court then asked whether Phillip was stipulating that he would give Karen half of the shares, and Phillip answered in the affirmative. A photocopy of Phillip's stock certificate was later entered into evidence at trial. The second page of the exhibit stated that transfer of the certificate was governed by provisions of an agreement dated December 26, 1987. The agreement had not been located by the time of trial. It was subsequently determined that Seymour & Sons was a closely held corporation, and that a restriction on the transfer of shares existed. It was also determined that family member shareholders receive salary but no dividends. Since Phillip obtained the stock prior to the marriage, and no evidence was available to determine whether the value of the stock had increased during the course of the marriage, the chancellor ruled that the stock was Phillip's non-marital property. Phillip argues on appeal that the chancellor erred in failing to enforce the "stipulation" of the parties to divide the Seymour & Sons stock equally.
¶ 10. Black's Law Dictionary defines stipulation as, "A voluntary agreement between opposing parties concerning some relevant point." Black's Law Dictionary 1427 (7th ed.1999). However, the supreme court has stated, "Parties cannot by stipulation affect any right but their own[,] and persons not parties to the stipulation are not bound by it." Roberts v. James Mfg. Co., 197 So.2d 808, 811 (Miss.1967) (citing 83 C.J.S. Stipulations § 14 (1953)). Additionally, stipulations may be set aside for several reasons, including material mistake of fact, misrepresentation, inadvertence and improvidence. 83 C.J.S. Stipulations § 35 (1953). The restrictions placed on the transfer of Seymour & Sons stock included a right of first refusal in favor of the family member shareholders.[1] Accordingly, Phillip's oral "stipulation" at trial was invalid because, if enforced, it would have affected the rights of third parties. The "stipulation" was also properly set aside by the trial court as a mistake of fact, since Phillip incorrectly believed that he could freely transfer half of his shares to Karen. Therefore, Phillip's assertion that the trial court erred in failing to enforce the stipulation is without merit.
¶ 11. Phillip also asserts that the trial court erred in assigning a value of $157,500 to his 11,000 shares of stock. "[I]t is incumbent upon the parties, and not the chancellor, to prepare evidence touching on matters pertinent to the issues to be tried." Jackson v. Jackson, 922 So.2d 53(¶ 14) (Miss.Ct.App.2006) (quoting Dunaway v. Dunaway, 749 So.2d 1112, 1118(¶ 14) (Miss.Ct.App.1999)). The only evidence presented at trial regarding the stock's value came from Phillip's Rule 8.05 financial declaration. Therefore, we decline to find that the chancellor erred in using Phillip's own submission of evidence to determine the stock's value.
¶ 12. Phillip also claims that the chancellor erred in assigning the full value of the stocks to him in the equitable distribution analysis. Since Phillip obtained the Seymour & Sons stock prior to the marriage, the chancellor was correct in classifying the stock as his separate property. *519 Hankins v. Hankins, 866 So.2d 508, 511(¶ 13) (Miss.Ct.App.2004) (citing Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss. 1994)). Any increase in the value of the stock that was realized during the course of the marriage could have been deemed marital property. Johnson v. Johnson, 877 So.2d 485, 493(¶ 34) (Miss.Ct.App.2003) (citing A & L, Inc. v. Grantham, 747 So.2d 832, 838-39 (¶¶ 16-25) (Miss.1999)). However, no evidence was presented to determine whether the value of the stock had increased during the course of the marriage. This issue is without merit.
IV. THE TRIAL COURT ERRED IN DIVIDING THE MARITAL ASSETS OF THE PARTIES.
¶ 13. The chancellor determined that the Seymours' marital property consisted of the marital home and adjoining lot, two vehicles, one investment account, tools, and household furnishings. The chancellor assigned value to the marital property, the total of which was $155,400. Karen was awarded the marital home and adjoining lot, one vehicle, the investment account, and the household furnishings for a total amount of $152,900. Phillip was awarded one vehicle and all of the tools for a total award of $4,500. Additionally, Phillip was ordered to pay the $11,000 mortgage on the marital home. Phillip asserts that the disparity in the award of marital property illustrates an abuse of discretion.
¶ 14. This Court reviews a chancellor's division of marital property under an abuse of discretion standard. Shoffner v. Shoffner, 909 So.2d 1245, 1250(¶ 11) (Miss.Ct.App.2005). The chancellor conducted a Ferguson analysis and addressed all applicable factors. The most relevant findings which support the chancellor's division of marital property concern the value of the non-marital property, the needs of the parties, and each party's income and earning capacities. While Phillip's non-marital property consists of the Seymour & Sons stock, Karen owns no non-marital property. There will be four people in Karen's household as opposed to only one in Phillip's. Phillip earns more than $50,000 per year, while Karen, a home-maker with minimal work force experience, earns only $18,000. Regarding the final Ferguson factor, "any other factors which in equity should be considered," the court found that Phillip's adultery should be considered since it was the admitted cause of the break down of the marriage.
¶ 15. "Equitable distribution does not mean equal distribution." Lauro v. Lauro, 924 So.2d 584, 590(¶ 23) (Miss.Ct. App.2006) (citing Chamblee v. Chamblee, 637 So.2d 850, 863-64 (Miss.1994)). As stated by the Ferguson court, the goals of equitable distribution are a fair division of marital property based on the facts of each case and termination of the legal relationship in a manner which each party may realize self-sufficiency. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). We find that although Phillip received a very small portion of the marital estate, the chancellor did not abuse his discretion.
V. THE TRIAL COURT ERRED BY GRANTING EXCESSIVE PERIODIC ALIMONY TO THE APPELLEE.
¶ 16. An award of alimony should only be considered if one party will suffer a deficit after the marital property has been equitably divided. Lauro v. Lauro, 847 So.2d 843, 848(¶ 13) (Miss.2003). "Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede." Id. (quoting LaRue v. LaRue, 172 W.Va. 158, 304 S.E.2d 312 (1983)). The factors which *520 a chancellor must consider when determining whether to award periodic alimony are,
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). The chancellor made the following findings with regard to the Armstrong factors. Karen has significantly less income from her employment and more expenses as the custodial parent. Both parties are in good health. Phillip earns in excess of $50,000 per year, while Karen earns $18,000 per year. Both parties have the ability to earn more income than they are currently earning and therefore should be able to maintain a decent standard of living for themselves and their children. Karen should not have significant obligations outside necessary living expenses since Phillip has been ordered to pay the outstanding debt of approximately $11,000 on the marital home. The Seymours were married for fourteen years, a factor which weighs in favor of alimony, particularly under the circumstances of this case. The fact that Karen will have three minor children in her household for whom she must provide childcare also weighs in favor of alimony. Phillip's misconduct was the cause of the divorce.
¶ 17. The record also indicates that Karen's total monthly intake, comprised of her salary, alimony and child support, is nearly equal to her total monthly expenses. A review of Phillip's reported income contrasted with his total monthly expenses, reveals that his expenses slightly exceed his reported income. However, the chancellor was aware that Phillip received more than his reported income, although he was less than forthcoming about the amount of money he receives from plumbing jobs. The record is clear that Karen's income along with her share of marital property and child support would not cover the basic monthly expenses for herself and her children. The addition of $1,000 per month in alimony leaves Karen with only a moderate surplus after paying the basic monthly expenses for her and her children. We find that the chancellor did not abuse his discretion.
VI. THE TRIAL COURT ERRED IN AWARDING ATTORNEY'S FEES TO THE APPELLEE.
¶ 18. It is within the chancellor's discretion whether to award attorney's fees in a divorce hearing. Deen v. Deen, 856 So.2d 736, 739(¶ 16) (Miss.Ct. App.2003). However, where a party has not demonstrated their inability to pay their own attorney's fees, such an award is inappropriate. Id. The party requesting attorney's fees has the burden of proving his inability to pay. Id. There is no evidence in the record to show that Karen is unable to pay her own attorney's fees. As discussed above, Karen's total monthly intake *521 covers her monthly expenses and leaves her with a surplus. Furthermore, Karen received an investment account worth $16,000, which could be liquidated. Since Karen has not shown an inability to pay her own attorney's fees, we reverse and render the award.
¶ 19. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. THE APPELLANT SHALL PAY 75% OF THE COST OF THIS APPEAL, AND THE APPELLEE SHALL PAY 25% OF THE COST OF THIS APPEAL.
MYERS, P.J., CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. SOUTHWICK, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., IRVING, AND GRIFFIS, JJ.
SOUTHWICK, J., Dissenting:
¶ 20. With respect for the majority's analysis on the several issues in this case, I find myself disagreeing as to the equitable distribution. Therefore I dissent.
¶ 21. The majority is certainly correct that equitable distribution has never been interpreted to require an equal distribution. Yet I venture to conclude that never in a situation in which some significant marital property exists, has equitable distribution meant nonexistent distribution to one of the spouses. That is in essence what occurred here, with ninety-seven percent of the marital property being allocated to the former wife.
¶ 22. I find that the chancellor abused his discretion in giving an overwhelmingly disproportionate percentage of the marital property to one spouse. True, there are reasons in this record to justify an unequal distribution. I would reverse and remand for the issue of equitable distribution to be reconsidered.
¶ 23. Since the various decisions that impact on the finances of the former spouses are interrelated such that increase in one component might require diminution in another, I would leave the issue of the amount of alimony open for re-evaluation after a new decision is made on equitable distribution.
LEE, P.J., IRVING AND GRIFFIS, JJ., JOIN THIS OPINION.
NOTES
[1] The December 26, 1987 agreement containing the restriction on the transfer of Seymour & Sons stock is not contained in the record. However, during a hearing on Phillip's motion to reconsider, his attorney stated that one of the restrictions on the transfer of stock was the family member shareholders' right of first refusal.