LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Joseph Gregg (Joe) and Patricia Gregg (Pat) were married in 1994. Joe
 
 *1279
 
 filed for divorce in 2007 in the Chancery Court of Webster County, and the parties consented to a divorce based on irreconcilable differences. The issues of equitable distribution and alimony were submitted to the chancellor.
 

 ¶ 2. The chancellor divided the couple’s property as follows:
 

 1. Joe was ordered to pay Pat $20,000, which represented one-third of the increased value of Joe’s pre-marital home in Webster County, Mississippi;
 

 2. Pat was awarded two pieces of property in Starkville, Mississippi that were purchased during the marriage;
 

 3. Pat was awarded a one-half interest in thirty acres in Webster County purchased during the marriage. Joe was given the option of buying the interest for $20,000 or selling the property and equally dividing the proceeds;
 

 4. Pat was awarded a one-half interest in the increased value of Joe’s retirement funds; and
 

 5. Pat’s home in Starkville owned prior to the marriage was found to be Pat’s separate property.
 

 Other property was distributed by the chancellor, but only the five items listed above are disputed by Joe. Therefore, the remaining distributions will not be discussed.
 

 ¶ 3. Joe now appeals the distribution by the chancellor, asserting the chancellor erred by: (1) awarding Pat a one-third interest in his pre-marital home without deducting one-third of the remaining debt; (2) awarding Pat a one-half interest in his retirement fund when all but one year’s contributions were made prior to the marriage; (3) awarding Pat the two Starkville lots and a one-half interest in the thirty-acre parcel of land in Webster County when the land was purchased with commingled funds; and (4) failing to appropriately consider his contribution to the marital estate. Finding no error, we affirm the judgment of the chancellor.
 

 FACTS
 

 ¶ 4. Joe and Pat resided in Joe’s home in Webster County until they separated in 2007. Both parties were over the age of sixty at the time of the divorce, and both are in relatively good health. They each receive social security benefits. The couple had no children together. Prior to their marriage, Pat lived in Starkville, where she owned a home. Joe was retired from the military and worked for the United States Post Office. He continued to work at the post office for one year after the couple married. His retirement income was deposited into the couple’s joint account. Prior to the marriage, Joe’s retirement account was valued at approximately $38,000. At the time of the divorce, it was valued at approximately $86,000. Pat owned a gift store in Stark-ville prior to the marriage. Pat’s income from this business was deposited into, the couple’s joint account. In 1998, Pat opened a second location of the business in Oxford. Joe helped operate the second location. The Oxford store was sold in 2002, and the Starkville store was sold in 2004.
 

 ¶ 5. The couple renovated and added on to Joe’s home where the couple resided during the marriage. Pat rented out her former home in Starkville for $1,250 a month. The rental income was placed into a joint account. Pat also received an inheritance of $300,000 from her father while she was married to Joe. Approximately $20,000 of this amount was left at the time
 
 *1280
 
 of the divorce. Most of the inheritance was spent on renovating the marital home and for other marital expenses. At the time of the hearing, Joe testified that his monthly income was $3,600. Pat’s only source of income was the rental income from the home in Starkville, which she planned to move into after the divorce. Thus, Pat had no income at the time of the divorce.
 

 ¶ 6. During the marriage, the couple purchased two lots in Starkville and thirty acres of land in Webster County adjacent to land that Joe had inherited. Joe took out a home-equity loan on his house in Webster County to purchase the land. A significant portion of the home-equity loan was paid off by the sale of Pat’s businesses and Pat’s inheritance.
 

 STANDARD OF REVIEW
 

 ¶ 7. An appellate court “employs a limited standard of review for the division and distribution of property in a divorce proceeding.”
 
 Phillips v. Phillips,
 
 904 So.2d 999, 1001 (¶ 8) (Miss.2004) (citing
 
 Reddell v. Reddell,
 
 696 So.2d 287, 288 (Miss.1997)). The chancellor’s findings of fact will not be disturbed “unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.”
 
 Id.
 
 (citing
 
 Owen v. Owen,
 
 798 So.2d 394, 398 (¶ 10) (Miss.2001)).
 

 DISCUSSION
 

 ¶ 8. Appellate courts “look to the chancellor’s application of the
 
 Ferguson
 
 factors when reviewing questions of equitable distribution.”
 
 Id.
 
 (citing
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994)). In
 
 Ferguson,
 
 the Mississippi Supreme Court set forth factors that chancellors must consider when equitably dividing a marital estate.
 
 Id.
 
 The
 
 Ferguson
 
 factors are:
 

 (1) contribution to the accumulation of property, (2) dissipation of assets, (3) the market or emotional value of assets subject to distribution, (4) the value of assets not subject to distribution, (5) the tax and economic consequences of the distribution, (6) the extent to which property division may eliminate the need for alimony, (7) the financial security needs of the parties, and (8) any other factor that in equity should be considered.
 

 Hults v. Hults,
 
 11 So.3d 1273, 1281 (¶ 36) (Miss.Ct.App.2009) (citing
 
 Ferguson,
 
 639 So.2d at 928-29).
 

 I. THE MARITAL HOME
 

 ¶ 9. Joe argues that the chancellor erred in awarding Pat a one-third interest in the appreciated value of the home he owned prior to the marriage without deducting a corresponding amount of debt.
 

 ¶ 10. Joe’s home was valued at approximately $50,000 when the couple married. After adding on to the home and making other improvements, the appraised value of the home at the time of the divorce was $110,000. In March 2001, the couple took out a home-equity loan on the home for $88,764. The loan was used to purchase the two lots in Starkville, an investment note, and one-third of the thirty-acre parcel of land in Webster County. In 2004, when Pat sold her business in Starkville, the proceeds were used to pay off the home-equity loan. The couple paid approximately $77,000 toward the home-equity loan from the proceeds of Pat’s business. Pat also used money from her inheritance to make renovations to the home, which contributed to its increase in value.
 

 
 *1281
 
 ¶ 11. Joe contends that the income from Pat’s businesses was commingled because Pat deposited it into the couple’s joint account. Therefore, he argues that the sum Pat paid on the home loan was from marital funds, which rendered any equity on the home subject to the remaining debt. Joe also argues that the chancellor’s award to Pat ignored his contribution to the marital home.
 

 ¶ 12. The chancellor found that Pat’s businesses remained her separate property despite the commingling of the proceeds from the businesses. Joe argues that the businesses were not separate property because he did maintenance and helped run the stores. The chancellor noted that while Joe made contributions to the Stark-ville and Oxford stores, they were not significant enough to convert the property to marital property. The chancellor noted that the stores were sold during the marriage, and both parties benefitted from the proceeds.
 

 ¶ 13. We cannot find that the chancellor was manifestly wrong in awarding Pat a one-third interest in the appreciated value of the home. The couple lived in the home for fourteen years. The home was clearly marital property. Pat contributed significantly to the increase in value of the home. Therefore, we find that the award was appropriate. As to Joe’s argument that the chancellor’s ruling ignored the debt owed on the home, we find that the chancellor made clear that the goal of the division of property was to eliminate the need for alimony. Holding that Pat was not responsible for the outstanding debt on the home was a way to reduce the need for alimony. This issue is without merit.
 

 II. RETIREMENT FUNDS
 

 ¶ 14. Prior to the marriage, Joe’s retirement funds were valued at approximately $38,000. During the marriage, Joe withdrew $13,000 from his IRA to make a payment on the thirty-acre parcel of property in Webster County purchased by the couple. At the time of the divorce, Joe’s retirement funds were worth approximately $86,000. He concedes that the $13,000 he withdrew during the marriage was correctly identified as marital property. However, he argues that the remaining amount was separate property because it was a passive increase in funds.
 

 ¶ 15. Joe argues the chancellor should have considered the retirement account in the same way as Pat’s former home. During the marriage, Pat’s home in Starkville increased in value from $80,000 to $169,000. The increase was categorized as separate property. Joe argues that the IRA required no maintenance. The home, however, required maintenance, such as painting and a new roof, which were paid for out of the joint account.
 

 ¶ 16. Marital property was defined in
 
 Hemsley v. Hemsley,
 
 639 So.2d 909, 915 (Miss.1994) as “any and all property acquired or accumulated during the marriage.” The retirement income which was acquired and accumulated during the marriage is marital property. Pat’s former home, on the other hand, was acquired before the marriage, and the chancellor determined that Joe presented no credible evidence to prove that the home was commingled as such to make it marital property. The chancellor noted that, while Joe argued that he performed maintenance on the home, any contribution Joe made to Pat’s home was minimal. Further, Pat testified that her retirement account was spent on expenses while the couple traveled the country in a RY. Therefore, Pat had no retirement savings. This issue is without merit.
 

 
 *1282
 
 III. LAND
 

 ¶ 17. Joe argues that the chancellor erred in awarding Pat the two Stark-ville lots and a one-half interest in the thirty acres in Webster County purchased during the marriage. He argues that in order to be equitable, the chancellor should have awarded Pat the lots in Stark-ville and awarded the thirty-acre parcel of land in Webster County solely to him.
 

 ¶ 18. The two lots in Starkville were valued at $50,000, and the thirty-acre parcel was valued at $40,000. The two Stark-ville lots and one-third of the land in Webster County were paid for with a portion of the $88,764 home-equity loan. The second one-third of the price of the land in Webster County was paid with proceeds from Joe’s IRA, and the final payment was made from the joint checking account. In 2004, when Pat sold her business, the proceeds were used to pay $77,000 toward the home-equity loan. Therefore, Pat paid one-third; Joe paid one-third; and the couple jointly paid one-third of the purchase price of the thirty-acre parcel of land. We find that the chancellor correctly reasoned that since each party contributed to one-half of the total purchase price, the land should be divided equally. The chancellor took into consideration that Joe would have more of an emotional attachment to the thirty acres because it is adjacent to property owned by his family. Thus, the chancellor awarded Joe the property and Pat a one-half interest in the property.
 

 ¶ 19. We find that the chancellor did not err in her distribution of the land. The funds used to purchase the Starkville property were Pat’s separate property, and each party contributed equally to the purchase of the Webster County property. Therefore, we find this issue is without merit.
 

 IV. CONTRIBUTION TO THE MARITAL ESTATE
 

 ¶ 20. Finally, Joe argues that the chancellor failed to consider his contributions to the marriage. Joe points out that he contributed money to the couple’s joint account when he worked for the post office; he contributed money to the joint account from the sale of timber on the land he had inherited; he used part of his IRA to pay for the thirty-acre parcel of land in Webster County; he ran the second location of Pat’s gift store from 1996-2001; he did carpentry work at the Starkville store; he performed maintenance on Pat’s former home; he helped set up a mobile home for Pat’s father so he could be near them; and he performed the yard work and other labor on the marital home.
 

 ¶ 21. The chancellor found that Pat’s testimony was credible and noted that she produced documentary evidence to support her contentions. Based on the documentary evidence provided by Pat, the chancellor found that the source of the majority of the funds used to purchase marital assets came from her inheritance and profits from the sale of her businesses. The chancellor found that most of Pat’s $300,000 inheritance was used to purchase marital assets or to pay Joe’s outstanding line of credit. The chancellor found Joe’s testimony regarding the value of the assets and the source of funds to acquire the assets was not credible. The chancellor recognized that while Joe performed some chores on Pat’s former home, there was no credible evidence to prove that the house became commingled such as to lose its separate identity. The chancellor also noted that Joe worked at the Starkville and Oxford stores. However, Pat testified that over the course of the marriage, Joe worked no more than a week to a week-
 
 *1283
 
 and-a-half at the stores. Further, the chancellor found that because the stores were sold during the marriage and the proceeds deposited into a joint account, the proceeds benefitted both parties.
 

 ¶ 22. We find that the chancellor’s division of the property was not manifestly wrong or clearly erroneous. The chancellor thoroughly considered each of the
 
 Ferguson
 
 factors in reaching her decision, and the division was made in a way as to avoid the need for alimony. Joe’s issues on appeal are without merit. The decision of the chancellor is affirmed.
 

 ¶ 23. THE JUDGMENT OF THE WEBSTER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE AND MAXWELL, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.