CARLTON, J.,
 

 for the Court:
 

 ¶ 1. Claudia Allgood appeals the judgment of the Chancery Court of Lowndes County, which granted her an irreconcilable-differences divorce from her husband, Deforrest Allgood (Forrest). Aggrieved with the chancellor’s property division and also his decision to deny her request for alimony, Claudia appeals.
 

 FACTS
 

 ¶ 2. Claudia and Forrest married on June 17, 1978. During the course of the marriage, the couple had three children together. The couple’s two older children both reached the age of majority prior to the time of the divorce. The youngest child, Keller, was age sixteen at the time of the divorce, and she lived with her mother.
 

 ¶ 3. At the time of their marriage, Claudia worked as an elementary-school teacher, and Forrest worked as an assistant district attorney. With financial support from her parents, Claudia earned her master’s degree in education in 1988. Forrest attended to the couple’s two children while Claudia took classes at night. Shortly after earning her master’s degree, Claudia left with the children and moved to Arkansas to reside closer to her mother. In Arkansas, Claudia filed for divorce from Forrest.
 

 ¶ 4. Claudia and Forrest ended their divorce proceedings, and the couple reconciled in May 1989. In early 1990, Claudia admitted to engaging in an extramarital affair, but the couple nonetheless reconciled in 1992 despite her revelation. Claudia gave birth to the couple’s third child in 1992. However, the reconciliation failed to resolve the marital discord. According to Forrest, he slept on a cot in his daughter’s room rather than sleeping in the marital bedroom with Claudia.
 

 ¶ 5. The couple’s marriage deteriorated further over time. Claudia and Forrest separated again in February 2007. The couple agreed to an irreconcilable-differences divorce, leaving contested issues for the chancery court to resolve, including the issues of property division and alimony. After a one-day trial
 
 [1]
 
 on October 3, 2009, the chancery court identified the separate and marital property of the parties and distributed the couple’s marital assets. Finding the property division sufficient, the chancellor denied Claudia alimony finding none warranted. Rather than file post-trial motions to allow the chancellor to address any perceived errors, Claudia noticed the present appeal twenty-eight days after the chancellor entered his judgment in this case.
 

 ¶ 6. On appeal, Claudia raises the following two assignments of error for our review: (1) whether the chancery court erred in its identification, classification, and equitable division of the parties’ property; and (2) whether the chancery court erred in failing to award alimony to Claudia.
 

 STANDARD OF REVIEW
 

 ¶ 7. “This Court’s standard of review regarding domestic relations matters
 
 *446
 
 is a limited one. We will not disturb the findings of a chancellor ‘unless manifestly wrong, clearly erroneous, or if the chancellor applied the wrong legal standard.’ ”
 
 McKnight v. McKnight,
 
 951 So.2d 594, 595-96 (¶5) (Miss.Ct.App.2007) (internal citations omitted). However, we review questions of law de novo.
 
 Oswalt v. Oswalt,
 
 981 So.2d 993, 995 (¶ 5) (Miss.Ct.App. 2007).
 

 DISCUSSION
 

 I.
 
 Whether the chancellor erred in his identification, classification, and equitable distribution of the parties ’ property.
 

 ¶ 8. In her first assignment of error, Claudia contends that the chancellor committed reversible error in his division and classification of certain marital and separate property. Specifically, Claudia argues that the chancellor erred in classifying a portion of the equity in the couple’s marital home as separate property belonging to Forrest. Further, Claudia asserts that the chancellor committed reversible error in failing to classify or divide money held in a campaign account in Forrest’s name. Claudia argues that the chancellor’s property classification and division resulted in Forrest receiving sixty-five percent of the marital assets, while Claudia received only thirty-five percent.
 

 ¶ 9. Case law governs how chancellors approach property division in divorce cases. Before dividing the couple’s assets, the chancellor should first classify the couple’s assets as either marital or non-marital.
 
 Boutwell v. Boutwell,
 
 829 So.2d 1216, 1221 (¶ 19) (Miss.2002). With respect to the classification of marital property, the Mississippi Supreme Court held in
 
 Hemsley v. Hemsley,
 
 639 So.2d 909, 914 (Miss.1994) that “[a]ssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties’ separate estates prior to the marriage or outside the marriage.” Thus, the chancellor subjects only the marital property of the parties to equitable division.
 
 Messer v. Messer,
 
 850 So.2d 161, 167 (¶ 24) (Miss.Ct.App.2003) (citing
 
 Hemsley,
 
 639 So.2d at 914).
 

 ¶ 10. After classifying the parties’ assets as either marital or non-marital, the chancellor should then proceed with the equitable division of the property using the factors set forth by the supreme court in
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994). The record herein reflects that the chancellor complied with precedent in classifying the parties’ assets prior to the equitable division of the property and also that he used the
 
 Ferguson
 
 factors in his equitable division of the assets.
 
 Messer,
 
 850 So.2d at 167-68 (¶ 25).
 
 [2]
 
 Finally, the chancellor should examine whether the equitable division of the marital property, considered in light of the non-marital assets, adequately provides for both parties.
 
 Id.
 
 at 168 (¶ 26). If the distribution of the parties’ assets, including any separate property, fails to adequately provide
 
 *447
 
 for the parties, then the chancellor should consider whether to award alimony to one of the parties.
 
 Id.
 
 The record shows that the chancellor considered whether the distribution of assets failed to provide adequately for Claudia, but he found no need for alimony existed.
 

 ¶ 11. On appeal, Claudia asserts that the chancellor erred in the classification and division of the marital home. She argues that the chancellor erred in classifying and dividing a portion of the marital home as separate property. She also asserts that the chancellor erred in finding that a campaign account was Forrest’s separate property. To address Claudia’s argument as to whether the chancellor erred in his division of the marital home, we must examine the family-use doctrine. We must also acknowledge that in his classification of the assets of the parties, the chancellor classified the marital home as marital property.
 

 ¶ 12. Mississippi courts recognize a general presumption that property acquired during a marriage constitutes marital property.
 
 Hemsley,
 
 639 So.2d at 914 (adopting a presumption of marital property). However,
 
 Hemsley
 
 defined marital property as assets acquired or accumulated during the course of a marriage other than assets attributable to a spouse’s separate estate either prior to the marriage or outside the marriage.
 
 Id.
 
 at 915.
 
 Ferguson
 
 clarifies that gifts and inheritances received during marriage constitute the separate property of a spouse.
 
 Ferguson,
 
 639 So.2d at 928.
 

 ¶ 13. Because assets owned by a spouse are presumed to be marital property, the party seeking to classify property as separate, or non-marital, bears the burden of tracing the asset to a separate-property source.
 
 See
 
 Deborah H. Bell, Bell on Mississippi Family Law § 6.05[2] (2005). An inheritance or gift made to one spouse during the marriage remains the separate property of that spouse.
 
 Ferguson,
 
 639 So.2d at 928. Spouses may convert separate property to marital property through actions of the owning spouse.
 
 See
 
 Bell, § 6.04. Spouses possessing separate ownership convert the property into marital property through the following actions: conversion by implied gift,
 
 [3]
 
 family use, or commingling.
 
 See Yancey v. Yancey,
 
 752 So.2d 1006, 1011 (¶ 20) (Miss.1999). Our supreme court allows a spouse asserting a separate ownership interest to maintain that separate interest in some cases by tracing the commingled separate funds, but the supreme court has generally refrained from allowing separate ownership to be established in this fashion as to certain assets such as the family home, where the family-use doctrine would apply.
 
 However, the case law in this area has not always been consistent.
 

 ¶ 14. Turning to precedent to guide us, we find the case of
 
 Singley v. Singley,
 
 846 So.2d 1004, 1011-12 (¶¶ 19-21) (Miss.2002) presented a similar situation wherein the supreme court found that a husband had commingled his $70,000 inheritance when he spent the money on a down payment for the home, and the court remanded for the chancellor to reconsider this amount in applying the
 
 Fer
 
 
 *448
 

 guson
 
 factors in equitable distribution. A chancellor possesses the discretion to adjust equitably the
 
 Ferguson
 
 distribution in recognition of a separate contribution of a spouse. Both the evidence in the record and the decision of the chancellor in theinstant case reflect such consideration of the significant separate contribution by Forrest to the marital home and estate.
 
 Cf. Gutierrez v. Bucci,
 
 827 So.2d 27, 39 (¶ 65) (Miss.2002) (finding no error in chancery court’s award of $5,000 equity in property to husband in light of wife’s dissipation of assets).
 

 ¶ 15. The record shows that the parties agreed that Forrest’s inheritance from his mother’s estate constituted Forrest’s separate property. In 2003, Forrest deposited $92,000 into a joint savings account he held with Claudia. In January 2005, Forrest withdrew $60,000 from that account to make a lump-sum payment on the mortgage on the family home. According to Forrest, all of the funds used in the early payoff of the mortgage originated from his separate inherited funds, despite their being placed in a joint savings account. In
 
 Boutwell,
 
 829 So.2d at 1221(¶ 20) (citing
 
 Heigle v. Heigle,
 
 654 So.2d 895, 897 (Miss.1995)), the supreme court held that assets classified as non-marital, such as an inheritance, may be converted to marital assets if they are commingled with marital property or utilized for domestic purposes, absent an agreement to the contrary. The supreme court defined commingled property as a “combination of marital and non-marital property in which the non-marital property has lost its status as non-marital property by virtue of its being combined with the marital property.”
 
 Id.
 
 (citing
 
 Maslowski v. Maslowski,
 
 655 So.2d 18, 20 (Miss.1995)).
 

 ¶ 16. In this case, Forrest spent his separate money derived from inheritance for a family purpose of an early payoff of the family mortgage during the course of the marriage, and the record reflects no evidence of any reimbursement agreement or evidence of a loan of his separate money so spent. More specifically, the record reflects that Forrest deposited $60,000 of inherited funds into a jointly titled savings account and then transferred the funds into his personal checking account to prepay part of the balance owed on the mortgage on the family home. An additional $22,000 from the sale of Forrest’s parents’ house went directly to Forrest’s individual checking account. He also applied those funds to the mortgage, and he fully satisfied the balance of the mortgage loan. The Allgood family continued living in the home after satisfying the debt of the mortgage. Based upon these facts, the chancellor found no dispute existed that Forrest had used his inherited funds to satisfy the mortgage on the home.
 

 ¶ 17. The chancellor properly classified the family home as marital property in his initial classification of property, and the chancellor then properly exercised his discretion in considering Forrest’s significant contribution to the marital estate from his separate funds. In explaining his equitable division of the marital property, the chancellor explained that he considered Forrest’s significant contribution from his separate property made to satisfy the mortgage debt on the family home, and the chancellor further explained that the equitable division of the parties’ property by the court credited Forrest for that significant separate contribution. We, therefore, find no abuse of discretion in the chancellor’s award to Forrest of a larger share of the marital estate in recognition of his significant contribution from his separate property. Claudia’s assertion that the chancellor improperly classified the martial home as partially separate proper
 
 *449
 
 ty is without merit. The evidence in the record supports the chancellor’s equitable division of the property, and a reading of the chancellor’s opinion as a whole shows the chancellor properly classified the family home as marital property.
 
 See Sanderson v. Sanderson,
 
 824 So.2d 628, 625-26 (¶ 8) (Miss.2002).
 

 ¶ 18. We acknowledge that “[e]q-uitable distribution does not mean equal distribution.”
 
 Seymour v. Seymour,
 
 960 So.2d 513, 519 (¶ 15) (Miss.Ct.App.2006) (quoting
 
 Lauro v. Lauro,
 
 924 So.2d 584, 590 (¶ 23) (Miss.Ct.App.2006)). No requirement exists dictating that Claudia receive half, or fifty-percent, of the equity in the marital home. As we noted in
 
 Seymour,
 
 the goal of equitable division is “a fair division of marital property based on the facts of each case.... ”
 
 Seymour,
 
 960 So.2d at 519 (¶ 15) (citing
 
 Ferguson,
 
 639 So.2d at 929). The chancellor appropriately exercised his discretion in considering Forrest’s significant separate contribution in awarding him a larger share of the marital property. This Court can find no abuse of discretion in allowing Forrest credit for the inherited funds used to pay off the mortgage.
 

 ¶ 19. Claudia also asserts that a campaign account constituted marital property and should have been divided. However, she failed to provide supporting authority for this argument or factual support. We note that arguments advanced on appeal must “contain the contentions of the appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.” M.R.A.P. 28(a)(6);
 
 Birrages v. Ill. Cent R.R.,
 
 950 So.2d 188, 194 (¶ 14) (Miss.Ct.App.2006) (“Failure to comply with [Mississippi Rule of Appellate Procedure] 28(a)(6) renders an argument procedurally barred.”). The record shows that the account in question belonged to Forrest’s political campaign and then belonged to Forrest as he is reflected as the owner of the account bearing his name. Forrest testified that the campaign fund included $8,702.27. Forrest further testified that all of the money in the campaign fund was donated to him during various elections and put into a certificate of deposit. Forrest testified that if any money was not used on the campaign, it was put into a certificate of deposit and would remain there until the next campaign. Forrest testified that none of the money donated to him for campaign purposes has ever been used for anything but his campaigns for office and that Claudia did not help raise this money. Therefore, we find that the record does not reflect any evidence that the funds were used for marital or family purpose, and the campaign funds were not calculated as a part of the division of property.
 
 [4]
 

 II.
 
 Whether the chancellor erred in not awarding alimony to Claudia.
 

 ¶ 20. The Mississippi Supreme Court in
 
 Gray v. Gray,
 
 562 So.2d 79, 83 (Miss.1990) held:
 

 Alimony, if allowed, should be reasonable in amount commensurate with the wife’s accustomed standard of living, minus, her own resources, and considering the ability of the husband to pay. As long as the chancellor follows this gener
 
 *450
 
 al standard, the amount of the award is largely within his discretion.
 

 ¶ 21. Since the decision to grant alimony is left to the discretion of the chancellor, this Court will not reverse unless the chancellor manifestly erred and abused his discretion.
 
 Voda, v. Voda,
 
 731 So.2d 1152, 1154 (¶ 7) (Miss.1999). In order to obtain a reversal for failure to award alimony, the chancellor’s decision must be seen as “so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion.”
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993).
 

 ¶ 22. In this case, the chancellor found that the award to Claudia, resulting from the equitable division of property, requiring Forrest to pay her $144,875, coupled with her current employment, constituted sufficient means for Claudia.
 

 ¶23. Regarding appellate review of a chancellor’s decision whether or not to award alimony, the supreme court provided the following:
 

 Our scope of review of an alimony award is well-settled. Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion. The ruling of the chancellor will not be disturbed if the findings of fact are supported by credible evidence in the record.
 

 Mabus v. Mabus,
 
 890 So.2d 806, 822 (¶ 65) (Miss.2003) (internal quotations and citations omitted). After finding that the equitable division of property and Claudia’s employment at the time of divorce constituted sufficient means, the chancellor found alimony unwarranted. The evidence in the record provides substantial support for the decision of the chancellor.
 
 See Sanderson,
 
 824 So.2d at 625-26 (¶ 8). We, therefore, affirm the chancellor’s judgment.
 

 ¶ 24. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . The Honorable Edward C. Fenwick was appointed by the Mississippi Supreme Court to serve as special chancellor in this case.
 

 [2]
 

 . The
 
 Ferguson
 
 factors include the following: “(1) substantial contributions to the accumulation of the property, including economic and domestic contributions by each party to the marriage, (2) expenditures and disposal of the marital assets by each party, (3) the market value and emotional value of the marital assets, (4) the value of the non[-]maritaI property, (5) tax, economic, contractual, and legal consequences of the distribution, (6) elimination of alimony and other future frictional contact between the parties, (7) the income and earning capacity of each party, and (8) any other relevant factor that should be considered in making an equitable distribution.”
 
 Selman v. Selman,
 
 722 So.2d 547, 552 (¶ 16) (Miss.1998) (citing
 
 Ferguson,
 
 639 So.2d at 928).
 

 [3]
 

 . Professor Bell explains that conversion by implied gift occurs when an owner’s actions show an intention to give an asset to the marital estate. Bell, § 6.04. Professor Bell further provides that courts look at several factors in ascertaining intent, including statements by the owner, family use of the asset, and the manner of title ownership and existence. She further noted precedent wherein the Mississippi Supreme Court held that the joint title presumption no longer applies in Mississippi equitable distribution. Bell, § 6.04[2] (citing
 
 Pearson v. Pearson,
 
 761 So.2d 157, 163 (Miss.2000)).
 

 [4]
 

 . This opinion does not address any campaign finance implications or taxation consequences resulting from personal use of campaign funds or implications of use of such funds for purposes other than purposes for which the campaign fund was established. This opinion addresses only whether these funds, in light of the evidence in this case, should be classified as marital or separate property.