# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00605-COA

**STACY LAQUITA (MYERS) WARE**                                    **APPELLANT**

**v.**

**DEMARCUS ANTHONY WARE**                                          **APPELLEE**

DATE OF JUDGMENT:              04/21/2023
TRIAL JUDGE:                   HON. PERCY L. LYNCHARD JR.
COURT FROM WHICH APPEALED:     DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        PAUL E. ROGERS
ATTORNEY FOR APPELLEE:         JERRY WESLEY HISAW
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   AFFIRMED - 06/11/2024
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., GREENLEE AND WESTBROOKS, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Stacy Myers, previously Stacy Ware, and Demarcus Ware were granted a divorce based on irreconcilable differences by the DeSoto County Chancery Court. The chancery court found that the marital home was marital property and divided it equally between the parties. On appeal, Stacy claims that the court erred by finding the marital home was marital property, by splitting the marital home equally between the parties, and by failing to make findings of fact and conclusions of law in the final judgment. Finding no abuse of discretion, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Stacy and Demarcus were married on April 2, 2017. Once married, Stacy sold her previous home, receiving $111,000 in equity, and used the funds from that sale to purchase

a new home with Demarcus. Stacy and Demarcus lived together in this new home until their separation in March 2022. Both Stacy and Demarcus were listed on the deed of their marital home.

¶3. Stacy and Demarcus opened a joint bank account. Stacy maintained a personal account and deposited her money from the sale of her home into it. However, she testified that she would move money from her personal account to the joint account and vice versa. Payments on the marital home mortgage came mostly from her personal account and some from the joint account.

¶4. Demarcus owned his own trucking business. He testified that he would put his earnings from his business into his joint account with Stacy to pay for bills. In June 2021, Demarcus deposited a roughly $20,000 payment in their joint account to pay toward their mortgage on the marital property. In addition, Demarcus testified that he cashed out a life insurance policy to help with the mortgage.[1]

¶5. Stacy filed a complaint for divorce against Demarcus on March 16, 2022. Demarcus filed an answer and counterclaim on May 31, 2022. A temporary order was entered on June 2, 2022. The parties consented to a divorce based on irreconcilable differences, with the chancery court to determine issues of property division, including the marital home and Demarcus' business, alimony, and attorney's fees.

¶6. The case went to trial on March 16, 2023. Both Stacy and Demarcus testified. After

---

[1] The parties disagree on the amount of money Demarcus put into the joint account and whether it was used to pay off the mortgage. However, the record supports Demarcus' claim regarding the $20,000 deposit and other deposits into the joint account.

both parties finished their testimony and all evidence was admitted, the chancellor issued his oral ruling. The chancellor found that the marital estate included Demarcus' business, a tractor, several vehicles, debts, and the marital home with its furnishings. He found that the home, which was purchased for $510,000, was valued at $615,000. The parties still owed $460,000, so the home equity was valued at $151,000.

¶7. At trial, Stacy argued that the marital home should not be considered marital property because she paid for most of the mortgage with non-marital funds from the sale of the previous home. The chancellor found that these funds became marital assets by being transferred between Stacy's personal bank account and the parties' joint bank account. This caused the funds to be commingled with Demarcus' assets. In addition, the chancellor found that the marital home was considered marital property under the family-use doctrine.

¶8. Next, the chancellor conducted a thorough *Ferguson* analysis[2] by addressing each *Ferguson* factor. The chancellor found that the marital home should be equally divided between the parties. The chancellor ordered that Stacy could reside in the home until it was sold and that she was responsible for the utilities, mortgage payments, and debt for the pool until the house was sold.[3] Stacy was awarded the tractor and equipment, which was valued at $20,000 with $21,000 still owed. She was also awarded the 2019 Mercedes and the GMC Yukon along with the debt on each. Demarcus was awarded the Nissan Maxima valued at $8,403 and his business, which was valued at zero based on its assets and liabilities.

---

[2] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

[3] The personal property in the home was also split between the parties.

Demarcus was also ordered to be solely responsible for the IRS debt of $16,500 and any other liabilities not listed on his financial statement. The chancellor conducted an *Armstrong* analysis[4] and determined that alimony was not due to either party. Finally, the chancellor declined to award either party attorney's fees.

¶9. The chancery court entered its "Final Judgment of Divorce" on April 21, 2023, granting the parties' divorce based on irreconcilable differences and making record of the chancellor's findings on equitable distribution, alimony, and attorney's fees during his oral ruling. In the court's final judgment, the chancellor stated that he considered the *Ferguson* factors, but he did not explicitly list them. Stacy filed a motion to alter or amend the final judgment on May 1, 2023. The sole issue on that motion was the change of Stacy's last name from "Ware" to "Myers." The chancery court granted Stacy's motion and restored her last name to "Myers." Stacy filed her notice of appeal on May 24, 2023.

## STANDARD OF REVIEW

¶10. "This Court's standard of review regarding domestic relations matters is a limited one. We will not disturb the findings of a chancellor unless [they are] manifestly wrong, clearly erroneous, or if the chancellor applied the wrong legal standard." *Allgood v. Allgood*, 62 So. 3d 443, 445-46 (¶7) (Miss. Ct. App. 2011) (internal quotation marks omitted). We review questions of law de novo. *Id.*

## DISCUSSION

¶11. Stacy claims the chancery court erred (1) by finding the marital home was a marital

---

[4] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

asset; (2) by distributing the marital home equally between the parties; and (3) by not listing the specific findings of fact and conclusions of law in the final judgment. Finding no errors, we affirm.

### (1)     Finding the Marital Home Was a Marital Asset

¶12.    Stacy claims the chancery court erred by finding that the marital home was a marital asset. She argues that she paid for the majority of the home's purchase, upgrades, and upkeep using non-marital funds from the sale of her previous home. Demarcus claims that this issue is procedurally barred because Stacy failed to raise the issue in her motion to alter or amend the final judgment of divorce.

¶13.    Demarcus' claim that Stacy is procedurally barred from arguing this issue on appeal is without merit. Stacy's post-trial motion raised the sole issue of changing her last name. While it is "better practice to include all potential assignments of error in a motion for new trial," assignments of error that are based on an issue decided by the trial court and are recorded in the record may be considered on appeal regardless of whether it was raised in a motion for a new trial. *Kiddy v. Lipscomb*, 628 So. 2d 1355, 1359 (Miss. 1993). This issue was raised before the chancery court, and the court decided the issue; therefore, we may consider it on appeal.

¶14.    "Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994). Because of the general assumption that assets

5

owned by a spouse are marital property, the burden of tracing an asset to a separate-property source is on the party seeking to classify it as such. *Allgood*, 62 So. 3d at 447 (¶13) (citing Deborah H. Bell, *Bell on Mississippi Family Law* § 6.05[2] (2005)). In addition, "nonmarital assets (e.g. inherited property) may be converted to marital assets if they are commingled with marital assets or used for familial purposes." *Heigle v. Heigle*, 654 So. 2d 895, 897 (Miss. 1995).

¶15. Here, the chancery court correctly identified the marital home as a marital asset. To overcome the presumption that the home is marital property, Stacy must be able to trace the funds she used to purchase the home back to the separate-property source. But Stacy could not adequately trace the funds because she transferred portions of the funds between her personal account and joint account. This commingled her separate-property assets with marital assets. It is also disputed whether Stacy paid the mortgage using solely her money or Demarcus' money. This is distinguishable from *Neely v. Neely*, 305 So. 3d 164, 172 (¶¶28-29) (Miss. Ct. App. 2020), where the chancellor found that the parties' marital home was separate property because the wife undisputedly made all payments associated with the marital home and "met her burden of tracing the marital home to a separate-property source."

¶16. Even if Stacy had been able to perfectly trace the funds, the chancellor's finding that the home was marital property under the family use doctrine is still supported by the record. Demarcus testified that he would pay bills by depositing money into their joint account. He also stated that he deposited $20,000 to pay toward the home's mortgage. The record shows these deposits. Stacy claimed that the money Demarcus deposited did not go toward the

home or any bills, but she could not prove that it did not. The chancellor did not abuse his discretion by finding the marital home was marital property.

### (2) Distributing the Marital Home Equally Between the Parties

¶17. Stacy claims that the chancery court erred by equally distributing the marital home between the parties.

¶18. "Appellate courts look to the chancellor's application of the *Ferguson* factors when reviewing questions of equitable distribution." *Gregg v. Gregg*, 31 So. 3d 1277, 1280 (¶8) (Miss. Ct. App. 2010). The *Ferguson* factors are the following:

> (1) contribution to the accumulation of property, (2) dissipation of assets, (3) the market or emotional value of assets subject to distribution, (4) the value of assets not subject to distribution, (5) the tax and economic consequences of the distribution, (6) the extent to which property division may eliminate the need for alimony, (7) the financial security needs of the parties, and (8) any other factor that in equity should be considered.

*Id.* (citing *Ferguson*, 639 So. 2d at 928-29). Mississippi courts agree that "an equitable division of property does not necessarily mean an equal division of property." *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994). "[Equitable division] is committed to the discretion and conscience of the Court, having in mind all of the equities and other relevant facts and circumstances." *Id.* at 864 (quoting *Brown v. Brown*, 574 So. 2d 688, 691 (Miss. 1990)).

¶19. Stacy's argument on appeal seems to be that she deserved more of the home's equity because she paid more of the home's mortgage. However, the goal of equitable distribution is not to reward one spouse who had more money or paid more bills. "[T]he goal of the chancellor in a divorce case is to do equity." *Ferguson*, 639 So. 2d at 934. Demarcus had

7

more debts and a less stable income than Stacy. Stacy noted in her appellant's brief that Demarcus' business reported more expenses than income in 2021. The chancellor thoroughly analyzed each *Ferguson* factor, and each one was supported by the evidence.

¶20. The only *Ferguson* factor that Stacy discusses is the contribution to the accumulation of property. Stacy argues that the chancery court did not appreciate that she was the main contributor to the acquisition of the home because she paid the down payment. However, the chancery court considered that Stacy likely would not have obtained the home loan for nearly $600,000 by herself based on her annual income of $60,000. The chancery court did not abuse its discretion by awarding each party fifty percent of the marital home.

### (3)     Failing to Make Specific Findings of Fact and Conclusions of Law

¶21. On appeal, Stacy claims the court erred by failing to make findings of fact and conclusions of law in the final judgment of divorce.

¶22. "As to the *Ferguson* factors, the supreme court has held that the chancellor is only required to address those factors that are relevant to the case at hand." *Seghini v. Seghini*, 42 So. 3d 635, 641 (¶21) (Miss. Ct. App. 2010) (citing *Weathersby v. Weathersby*, 693 So. 2d 1348, 1354 (Miss. 1997)). "Moreover, this court has held that failure to make an explicit factor-by-factor analysis does not necessarily require reversal where we are satisfied that the chancellor considered the relevant facts." *Id.* (citing *Palmer v. Palmer*, 841 So. 2d 185, 190 (¶18) (Miss. Ct. App. 2003)).

¶23. Here, the record shows that the chancellor considered the relevant *Ferguson* factors. In fact, the chancellor's oral opinion at the end of trial included explicit reference to each

8

factor and contained a thorough analysis. Stacy fails to cite a case holding that the chancellor's findings must be explicitly stated in the court's printed Final Judgment. This issue is without merit.

## CONCLUSION

¶24. The chancery court correctly identified the marital home as marital property, and the evidence supported the equal split of the home between the two parties. In addition, the chancellor conducted a thorough *Ferguson* analysis at trial. Finding that the chancery court did not abuse its discretion, we affirm.

¶25. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**