938 So.2d 912 (2006)
Carlos DAVISON a/k/a Carlos D. Davison, Appellant
v.
MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, Appellee.
No. 2005-CA-00088-COA.
Court of Appeals of Mississippi.
October 3, 2006.
*913 George S. Shaddock, Pascagoula, attorney for appellant.
James C. Smallwood, attorney for appellee.
Before KING, C.J., SOUTHWICK and IRVING, JJ.
KING, C.J., for the court.
¶1. Carlos Davison was ordered by the Jackson County Chancery Court to pay child support for four of his children. After Davison failed to pay child support, the special master assigned to Davison's cases found him in contempt. Davison objected to the special master's report by appealing to the chancery court. The chancery court adopted the special master's report, and ordered Davison to serve ninety days in jail or purge himself of contempt by paying the arrearage. Davison now appeals raising the following issues, which we quote verbatim:
I. Whether the appeal of the Master's three orders to the Chancery Court was proper under Rule 53.
II. Whether the chancellor erred in finding Davison able to work and provide child support, and thus in contempt.
III. Whether the Chancellor's judgment correctly followed the credible evidence adduced at both hearings.
Finding no reversible error, we affirm.

FACTS
¶2. Davison, twenty-seven years old at the time of the hearing in question, had *914 fathered at least four children by three different womenSandra Molden, Trease Jenkins, and Andrea Pitts.[1] On January 11, 2001, Davison was ordered to pay $180.98 per month in child support for the two children he fathered with Jenkins. On February 5, 2001, Davison was ordered to pay $150 per month in child support for the child he fathered with Molden. On February 14, 2002, Davison was ordered to pay $100 per month in child support for the child he fathered with Pitts.
¶3. On July 18, 2002, the special master found Davison in contempt of court for his failure to pay child support for Molden's child. The special master recommended forty days of incarceration and set a purge amount of $1,188.50. On July 25, 2002, Davison filed a motion of judicial review in the chancery court. On January 27, 2003, the chancellor remanded the Davison/Molden matter back to the master "for an evidentiary hearing on the amounts heretofore paid towards his obligations as per Order of February 5, 2001, and his present ability to pay any amount." On October 30, 2003, Davison failed to appear before the master on the Molden contempt charge, but his counsel appeared. The master again found Davison in contempt and ordered him to appear on January 28, 2004 to show cause. Davison had also been found in contempt on the Jenkins and Pitts child support orders, and January 28, 2004 was also set as Davison's show cause date on those matters. After several continuances, all three of Davison's cases were set for review on September 9, 2004. Once again, Davison failed to appear but graciously sent counsel in his place. Davison was again found in contempt on all three matters. The master recommended that Davison be incarcerated for thirty consecutive days on each finding of contempt in the Jackson County Adult Detention Center. The master also set three different purge amounts corresponding with the amount of arrearage in each matter. On September 23, 2004, Davison filed a notice of appeal in the chancery court regarding the master's report. On December 15, 2004, the chancellor heard the appeal, and subsequently entered an order affirming the master's findings.

ISSUES AND ANALYSIS
I. Whether the appeal of the Master's three orders to the Chancery Court was proper under Rule 53.
¶4. Mississippi Rules of Civil Procedure Rule 53(g)(2) states:
The court shall accept the master's findings of fact unless manifestly wrong. Within ten days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as provided by Rule 6(d). The court after hearing may adopt the report or modify it or may reject it in whole or in any part or may receive further evidence or may recommit it with instructions.
¶5. The master's report finding Davison in contempt was entered on September 9, 2004. DHS argues that the December 15, 2004 "appeal" before the chancellor was improper because Davison failed to serve a written objection to the report within ten days, and instead filed a notice of appeal fourteen days after the report was entered. *915 It does appear from the record that Davison failed to serve a written objection to the master's report within ten days. However, a master's report has no effect until it is either accepted or rejected by the chancellor. Evans v. Davis, 401 So.2d 1096, 1099 (Miss.1981). Even if Davison never filed a written objection or notice of appeal, the chancellor was still required to determine whether to accept or reject the master's report. Rule 53(g)(2) also makes clear that the chancellor had the authority to receive further evidence at the hearing, which he did. We find that not only was the chancellor correct in conducting the December 15, 2004 hearing, but also that he was required to decide whether to accept or reject the master's report.[2]
II. Whether the chancellor erred in finding Davison able to work and provide child support, and thus in contempt.
III. Whether the Chancellor's judgment correctly followed the credible evidence adduced at both hearings.
¶6. Although Davison frames his second and third issues separately, the question is simply whether the chancellor's findings were supported by substantial credible evidence. Absent a manifest abuse of discretion, this Court will not disturb a chancellor's findings which are supported by substantial credible evidence. Martin v. Lowery, 912 So.2d 461, 464(¶7) (Miss.2005)
¶7. At the hearing in which the chancellor reviewed the master's report, Davison argued that he should not be held in contempt for failure to pay child support because he is disabled and unemployable. Davison claimed that he suffers periodic seizures and blackouts resulting from a fall he suffered when he was six or seven years old. Davison's attorney attempted to present the master with documents allegedly from two of Davison's treating physicians to prove that Davison was disabled. However, the master and the chancellor found that the documents were hearsay.
¶8. In McIntosh v. Mississippi Dep't of Human Services, the supreme court held,
In contempt actions involving unpaid child support, a prima facie case of contempt has been established when the party entitled to receive support introduces evidence that the party required to pay the support has failed to do so. At this point, the burden shifts to the paying party to show an inability to pay or other defense; this proof must be clear and convincing and rise above a simple state of doubtfulness.
886 So.2d 721, 724-725(¶11) (Miss.2004) (internal citations omitted). The record clearly establishes that Davison was ordered to pay child support to Molden, Jenkins, and Pitts, and that he failed to comply with those orders. Therefore, it was up to Davison to prove by clear and convincing evidence that he was unable to pay the ordered child support due to his alleged disability.
¶9. Davison's testimony was the only evidence presented to prove his inability to pay child support. Davison testified that he is unable to work due to the alleged seizures and blackouts from which he suffers. However, Davison testified that he did work from the ages of seventeen to twenty-three years of age. Davison testified that his last job was with Lewis Printing Co. and that he quit "because it got *916 slow." He further testified that although he did not remember when he worked at Lewis Printing Co., when he quit, or how much he was paid, he did remember that he quit sometime after three withholding orders had been presented to his employer, although that was not the reason he quit. Although Davison claims that he is unemployable, he testified that he spends approximately four days per week at his brother's pool hall. He also testified that he was not employed at the pool hall, although he is often at the pool hall from open to close, maintains keys to the pool hall and often closes the pool hall for his brother. However, Davison maintained that he was not paid for these pseudo-employment activities. Although the record does not establish how Davison pays for his basic expenses, he did testify that he lives in a house owned by his brother who owns the pool hall. Finally, Davison also testified that he applied for and was denied Social Security disability benefits, and that at the time of the hearing that denial was on appeal.
¶10. A chancellor sitting as the finder of fact is in the best position to determine the veracity and credibility of a witness. Owen v. Owen, 928 So.2d 156, 168(¶35) (Miss.2006). In the chancellor's order adopting the master's report, the chancellor stated:
It appears that the Defendant is making every effort to avoid paying child support when he is able to move freely and do as he pleases in other areas and could be employed at some job and make an effort to pay toward the children he has fathered but has not. He has a very caviler [sic] attitude about same, as though it is not important, and that nothing can be done about it.
Clearly, the chancellor found that Davison did not meet his burden of proving by clear and convincing evidence his alleged inability to pay the ordered child support.
¶11. Davison also argues that the chancellor erred in ruling that three documents he sought to introduce into evidence were hearsay. One document is a letter allegedly written by Reginald Stewart, D.O. to Davison's attorney dated November 28, 2002, in which Dr. Stewart stated that Davison has a seizure disorder which prevents him from maintaining employment. The second document appears to be from a February 17, 2003 office visit. The document states that Davison "has had several seizures lately." At the bottom of the typed document, Dr. Stewart's name appears in typeface, but the document is not signed. The third rejected document was a letter "to whom it may concern" dated March 15, 2004, appearing on the letterhead of Terry J. Millette, M.D. However, the letter was authored by an individual named Amanda Stokes. The Stokes letter also referenced Davison's seizures and blackouts, and goes even further to state, "His medical problems render him disabled from a neurological standpoint."
¶12. "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). The Stewart and Stokes letters clearly meet the definition of hearsay, and the chancellor did not err in refusing to admit them into evidence. The documentation of Davison's February 17, 2003 visit to Dr. Stewart may have fallen under Mississippi Rules of Evidence, Rule 803(6), records of regularly conducted activity. However, Rule 803(6) requires that the document sought to be introduced as a record kept in the regular course of business be accompanied by "testimony of the custodian or other qualified witness," unless the document is self-authenticated in accordance with Rule 902(11). M.R.E. 803(6). See also Ferguson v. Snell, 905 So.2d 516, 520(¶12) (Miss. *917 2004). Davison did not have the record custodian nor any other qualified witness present to authenticate the document. Nor did the document meet the self-authenticating qualities contained in Rule 902(11). Therefore, the chancellor did not err in ruling that the three documents were hearsay.
¶13. In summary, the substantial credible evidence relied on by the chancellor includes the following. Davison admitted to having at least five years of employment some ten years after his accident. Also, Davison testified that he quit his last job because it "got slow," rather than as the result of any medical condition. Davison also testified that he is well enough to frequent a pool hall four days a week and perform many employment-like activities. Also, the fact that Davison has been denied Social Security disability benefits carries some evidentiary value.
¶14. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] The Mississippi Department of Human Services is the named plaintiff in this case because each of the mothers are recipients of Title IV-D services under the Social Security Act. See State Dep't of Human Servs. v. Shelby, 802 So.2d 89, 95(¶22) (Miss.2001) (quoting Blessing v. Freestone, 520 U.S. 329, 334, 117 S.Ct. 1353, 137 L.Ed.2d 569(1997)).
[2] This is not to say that a chancellor must hold a hearing in order to decide whether to accept or reject the master's report. Instead, Rule 53(g)(2) gives the chancellor the option to receive further evidence before making the determination.