## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00295-COA

ROBERT EDWARD FAERBER

APPELLANT/
CROSS-APPELLEE

v.

APRIL FAERBER

APPELLEE/
CROSS-APPELLANT

| | |
|---|---|
| DATE OF JUDGMENT: | 01/16/2013 |
| TRIAL JUDGE: | HON. JERRY G. MASON |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT D. JONES<br>ELIZABETH RHAE RANDALL DARSEY |
| ATTORNEYS FOR APPELLEE: | WILLIAM B. JACOB<br>JOSEPH A. KIERONSKI JR.<br>DANIEL P. SELF JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | FOUND INCREASE IN VALUE OF APPELLANT'S BUSINESS WAS MARITAL PROPERTY; AWARDED 50% OF THE VALUE OF THE MARITAL HOME TO APPELLEE; ORDERED APPELLANT TO PAY $208,680 IN EQUITABLE DISTRIBUTION AND CHILD SUPPORT |
| DISPOSITION: | AFFIRMED - 11/18/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., MAXWELL AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1.     Robert Faerber (Bobby) and April Faerber appear before this Court for the second appeal of the dissolution of their marriage. In the prior appeal, April asserted that the chancellor erred when he: failed to correctly apply the *Ferguson* factors in determining the

equitable distribution of the parties' marital property; failed to consider the business, College Park Auto (CPA), as Bobby's separate property; failed to award April permanent alimony; failed to award April attorney's fees; and failed to correctly determine Bobby's adjusted gross income for purposes of child support. Finding error, this Court reversed and remanded the case.[1] Bobby now appeals from the chancellor's judgment after remand, raising the following issues: (1) whether the chancellor erred in his equitable division of CPA and the marital home; and (2) whether the chancellor erred when he set the payment schedule for equitable distribution and amended child support. April cross-appeals raising the following issue: whether the chancellor erred in failing to award her attorney's fees. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     April and Bobby were married on July 7, 1995. The couple separated on February 11, 2005; and on March 8, 2005, April filed a complaint for divorce in the Lauderdale County Chancery Court on the ground of uncondoned adultery. On July 5, 2005, the chancellor entered a judgment granting temporary relief. A trial was held on December 4-5, 2007. During the trial, Bobby admitted to engaging in three adulterous relationships during the marriage. On January 14, 2008, the chancellor granted April and Bobby a divorce on the ground of Bobby's uncondoned adultery, distributed the marital  property, awarded April lump-sum alimony, and set child support.

¶3.     April appealed, and this Court reversed the judgment and remanded the case to the

---

[1]  *Faerber v. Faerber*, 13 So. 3d 853 (Miss. Ct. App. 2009).

trial court, finding that the chancellor erred in his application of the law and abused his discretion in the manner that he classified April's and Bobby's property, structured April's lump-sum alimony, and determined Bobby's adjusted gross income for purposes of child support.[2]

¶4. On March 31, 2010, the chancellor[3] entered an order designating the following issues for adjudication: equitable distribution of marital property; alimony; April's request for attorney's fees; and child support. A trial was held on June 25-27, 2012, and November 27, 2012, during which the chancellor heard testimony from both parties. On January 16, 2013, the chancellor entered a memorandum opinion and corresponding judgment in which the chancellor set forth his findings of fact and conclusions of law.

A. Marital Property

¶5. The chancellor found that the total value of the marital property was $742,937.50, consisting of personal property, the value of the formal marital home, and the business CPA. As for personal property, the chancellor found that forty-nine items of personal property were marital property, with a combined value of $119,937.50.[4] The chancellor awarded April

---

[2] *Faerber*, 13 So. 3d at 858 (¶19).

[3] Prior to the first appeal, April filed a motion to recuse due to the chancellor's alleged bias in favor of Bobby. The chancellor denied April's motion. Although April did not designate this issue as a separate assignment of error in her appeal, she did argue that the judgment displayed bias. Although we noted that April failed to provide proof that the chancellor abused his discretion in denying April's motion to recuse, we stated that the issue of recusal could be revisited on remand. On remand, the chancellor entered an order of recusal, and the case was reassigned to a different chancellor.

[4] Neither party contests the division of the personal property; therefore, we do not find it necessary to list each item of personal property and its respective value.

3

$41,487.50 in personal property. In turn, the chancellor awarded Bobby personal property with a total value of $78,450.

¶6. The chancellor found that CPA was marital property subject to equitable distribution. April was awarded thirty-three and one-third percent of the increased value of CPA in the amount of $74,326.[5] Bobby was awarded sixty-six and two-thirds percent of the increased value of CPA in the amount of $148,674.10. Finally, the chancellor found that the value of the former marital home was $325,000. April was awarded fifty percent of the value of the former marital home in the amount of $162,500. Thus, Bobby was ordered to pay April $181,326[6] in equitable distribution. The chancellor ordered that Bobby distribute the money to April in three payments: $50,000 on June 1, 2013; $50,000 on September 1, 2013; and $81,326 on February 1, 2014.

B. Adjusted Child Support

¶7. During the 2007-2008 divorce proceedings, Bobby did not seek custody of the parties' two children. In the judgment entered on January 14, 2008, the chancellor ordered Bobby to pay $376 per month in child support, plus half the children's medical expenses, which was an additional $100 per month. This amounted to twenty-five and three-tenths percent of Bobby's reported self-employment income of $1,880 per month. However, we reversed, finding that the record did not substantially support the chancellor's child-support award in

[5] The parties agreed that the original value of CPA was $75,000 and that CPA's value as of July 5, 2005, when temporary relief was ordered, was $298,000, an increase in value of $223,000.

[6] The total amount awarded to April was $236,826; however, Bobby was credited with $55,500 for previously designated lump-sum alimony.

4

light of Mississippi Code Annotated section 43-19-101(3)(a)-(b) (Rev. 2004). *Faerber*, 13 So. 3d at 864 (¶41). We further found that the chancellor erred when he "accepted Bobby's asserted monthly self-employment income reflected on his tax documents as $1,880 without considering the potential commingling of CPA's assets and expenses with personal assets and expenses, all of Bobby's income sources, and without considering the generally recognized test for determining self-employment income." *See id.* at (¶43). On remand, the chancellor found that Bobby's monthly adjusted income, as of December 2007, was $5,291.10; thus, Bobby's monthly child-support obligation, as of December 2007, should have been $1,058. The total amount of child support paid by Bobby from February 2008 to December 2011 was $22,372.[7] Based on the chancellor's corrected assessment on remand, Bobby should have paid a total of $49,726 in child support between February 2008 and December 2011. Thus, the chancellor found that Bobby owed $27,354 in amended child support. The chancellor ordered Bobby to pay April the amended child support in two equal installments of $13,677, to be paid on March 1, 2013, and on April 1, 2013.

### C. Attorney's Fees

¶8. April requested that Bobby be ordered to pay her attorney's fees. The chancellor found that April incurred attorney's fees of $9,246.54 for the first trial, $6,154.44 for the first appeal, and $17,018.75 for the second trial, for a total of $32,419.73. However, the chancellor denied April's request, finding that April failed to demonstrate an inability to pay her attorney's fees.

_____

[7] Bobby was paying $376 per month in child support and $100 per month for the children's medical coverage, for a total of $476 per month.

5

¶9.    On January 25, 2013, Bobby filed a motion for a new trial or to alter or amend the judgment. A hearing on Bobby's motion was held on February 11, 2013, during which Bobby argued that the chancellor failed to consider specific debts incurred after the parties' marriage when distributing the marital property and failed to consider the title and ownership of CPA when making the equitable distribution of the marital property. Bobby also argued that the chancellor's payment schedule for the amended child support and equitable distribution was unreasonable. On February 12, 2013, the chancellor entered a memorandum and order denying Bobby's motion for a new trial or to alter or amend the judgment.

¶10.    Bobby appeals, and April cross-appeals. Finding no error, we affirm.

## STANDARD OF REVIEW

¶11.    "This Court's scope of review in domestic-relations matters is strictly limited." *Curry v. Frazier*, 119 So. 3d 362, 365 (¶8) (Miss. Ct. App. 2013) (quoting *Pritchard v. Pritchard*, 99 So. 3d 1174, 1177 (¶18) (Miss. Ct. App. 2012)). "A chancellor's findings will not be disturbed when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Id.* (citation and internal quotation marks omitted).

## DISCUSSION

**DIRECT APPEAL**

>    **I.    Whether the chancellor erred in his equitable division of CPA and the marital home.**

¶12.    Bobby asserts that the chancellor erred in his equitable distribution of the marital property. Marital property has been defined as "any and all property acquired or

6

accumulated during the marriage." *Hemsley v. Hemsley*, 639 So. 2d 909, 915 (Miss. 1994).

For the purposes of divorce, "[a]ssets so acquired or accumulated during the course of the

marriage are marital assets and are subject to an equitable distribution by the chancellor."

*Id.* "We assume for divorce purposes that the contributions and efforts of the marital

partners, whether economic, domestic[,] or otherwise[,] are of equal value." *Id.* The

Mississippi Supreme Court's decision in *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994),

sets forth the framework for property designation and distribution.

> In light of [*Ferguson*] and its progeny, when dividing marital property, "chancellors are to (1) classify the parties' assets as marital or separate; (2) determine the value of those assets; (3) divide the marital estate equitably based upon the factors set forth in *Ferguson*; and (4) consider the appropriateness of alimony if either party is left with a deficiency."

*Roberts v. Roberts*, 135 So. 3d 935, 939-40 (¶13) (Miss. Ct. App. 2014) (quoting *Dickerson*

*v. Dickerson*, 34 So. 3d 637, 643-44 (¶23) (Miss. Ct. App. 2010)). The factors set forth in

*Ferguson* are:

> (1) contribution to the accumulation of property, (2) dissipation of assets, (3) the market or emotional value of assets subject to distribution, (4) the value of assets not subject to distribution, (5) the tax and economic consequences of the distribution, (6) the extent to which property division may eliminate the need for alimony, (7) the financial security needs of the parties, and (8) any other factor that in equity should be considered.

*Id.* (quoting *Dickerson*, 34 So. 3d at 644 (¶23)). Finally, "equitable distribution does not

mean equal distribution." *Brabham v. Brabham*, 950 So. 2d 1098, 1100 (¶7) (Miss. Ct. App.

2007) (citing *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994)).

### A.    CPA

¶13.    Bobby does not dispute that the increase in value of CPA during the course of the

marriage is marital property subject to equitable distribution. The parties agreed that the original value of CPA was $75,000 and that CPA's value as of July 5, 2005, when temporary relief was ordered, was $298,000, an increase in value of $223,000. However, Bobby contends that the chancellor erred when he found Bobby to be the sole owner of CPA. Instead, Booby argues that he only possessed a one-half interest in CPA. Bobby asserts that the chancellor's finding that he was the sole owner of CPA during the marriage was manifestly wrong, clearly erroneous, and not supported by substantial evidence; therefore, the chancellor erred in awarding April an equitable distribution of thirty-three and one-third percent of the increased value of CPA.

¶14. The ownership of CPA was a point of contention during the trial. CPA is an auto-repair, quick-lube, and auto-inspection business that was originally owned by Bobby's father, William Faerber. Bobby testified that he began working as the manager of CPA in 1987. On December 14, 1995, William conveyed a one-half interest in the real property and building where CPA is operated to Bobby. According to Bobby, this deed is evidence that Bobby only owned a one-half interest in CPA.

¶15. However, other evidence was received at trial that contradicted Bobby's claim. At trial, Bobby acknowledged that the Schedule C[8] on his 1995 tax return listed him as the sole owner of CPA. According to Bobby, William did not want to pay taxes on the business. Bobby and April's jointly filed 2002 and 2003 federal individual income tax returns were

---

[8] A Schedule C is a form used to report income or loss from a business that one operates or a profession one practiced as a sole proprietor. *See* www.irs.gov/uac/Schedule-C -(Form-1040),-Profit-or-Loss-From-Business.

8

also admitted at trial. Attached to each federal return was a Schedule C identifying Bobby as the proprietor of CPA. Bobby's 2004-2007 federal and state income-tax returns, in which Bobby filed as "married filing separately," were also received at trial.[9] The Schedule C's on the tax returns from 2004-2007 all identified Bobby as the proprietor of CPA. Bobby testified that the reason he filed as proprietor of CPA was because William "only drew a minimal amount out of the business and, therefore, was not going to be liable for taxes." However, Bobby acknowledged that the tax returns, which identified him as the sole proprietor of CPA, were signed under penalty of perjury.

¶16. The chancellor found that Bobby was the owner of CPA, which is reflected in the memorandum opinion entered on January 16, 2013, in which the chancellor found as follows:

> This [c]ourt has considered the evidence relevant to the acquisition, management[,] and operation of CPA. This [c]ourt finds that Bobby operated and managed CPA after December 14, 1995, and that . . . [William] was not involved in the daily operation and management of CPA. The CPA income was reported to the Internal Revenue Service as the income of Bobby Faerber. This [c]ourt finds that Bobby Faerber was the owner of CPA after December 14, 1995.

¶17. We find that the chancellor's finding that Bobby was the owner of CPA was supported by substantial evidence and that the chancellor was not manifestly wrong or clearly erroneous in his determinations. Accordingly, this issue is without merit.

### B. Marital Home

¶18. Bobby acknowledged that he and April lived in the former marital home as husband and wife from July 7, 1995, to February 11, 2005, and raised their two children in the home.

---

[9] April testified that she refused to file jointly after 2003.

Thus, Bobby does not dispute that the former marital home is marital property subject to equitable distribution. However, Bobby asserts that the chancellor erred in awarding April fifty percent of the value of the former marital home and that the chancellor erred in his valuation of the home.

¶19. Bobby built the home just prior to the parties' marriage. Bobby testified that he and his mother, Mary Faerber, paid for the construction of the home. According to testimony at trial, Mary loaned Bobby $50,000 to pay for the lot on which the home was built, as well as other costs. April did not contribute any funds toward the purchase of the lot and testified that her only financial contribution toward the construction of the home was her contribution of $5,000 for new carpet. However, the chancellor noted that Bobby was able to work nine to ten hours per day because April cared for the home and the children and that April was a stay-at-home mom and the parent who was at home to care for the children, among other household contributions.

¶20. Bobby asserts that the chancellor's award to April of fifty percent of the home was manifestly wrong and clearly erroneous and was not supported by substantial evidence, arguing that he should have been awarded a larger portion of the home based on his financial contributions.

¶21. We disagree with Bobby's assertion that the chancellor erred in awarding April fifty percent of the value of the marital home, regardless of the discrepancies in April's financial contribution toward the building of the home. We note again that "equitable distribution does not mean equal distribution." *Brabham*, 950 So. 2d at 1100 (¶7) Furthermore, we "assume for divorce purposes that the contributions and efforts of the marital partners,

whether economic, domestic[,] or otherwise[,] are of equal value." *Hemsley*, 639 So. 2d at 915. Finally, "[i]n applying the *Ferguson* factors, chancellors should consider each party's marital fault." *Dickerson*, 34 So. 3d at 644 (¶23).

¶22. Here the chancellor made extensive findings pursuant to *Ferguson*, and found:

> This [c]ourt has considered the evidence relevant to the purchase of the . . . lot, the construction of the former marital home[,] and the use of the former marital home by April [and] Bobby from April, 1995, to July 5, 2005. This is the marital home in which April and Bobby lived as wife and husband. . . . This [c]ourt finds that the former marital home and real property upon which it was constructed is marital property subject to equitable distribution[.]
>
> . . . .
>
> This [c]ourt further finds that April should be granted [fifty percent] of the value of the former marital home[.]

The chancellor also noted that April substantially contributed to the stability and harmony of the marital home and found that Bobby admitted his involvement in three extramarital affairs during the marriage.

¶23. Chancellors need not divide the marital estate equally when ordering equitable distribution; to the contrary, "an unequal division may be appropriate under certain circumstances." *Dickerson*, 34 So. 3d at 645 (¶30). Therefore, the chancellor's award to April of fifty percent of the home was not manifestly wrong or clearly erroneous and was supported by substantial evidence.

¶24. Bobby next argues that the chancellor erred in his valuation and division of the former marital home by failing to consider the $50,000 loan from Mary. However, the record is clear that the chancellor took the loan into consideration.

¶25. In his memorandum opinion, the chancellor noted: "Bobby and Mary . . . testified that

11

[Mary] provided Bobby with $50,000 in varying amounts for the house construction. [Mary] testified that the $50,000 was a loan and that she expected repayment. However, Bobby has not executed a note for $50,000.00 to his mother." The chancellor went on to describe Exhibit 34, which included copies of nine checks issued by Mary that amounted to $50,000. The chancellor concluded:

> This [c]ourt has considered the evidence relevant to the funds provided to Bobby by his mother to purchase the lot and construct the house. This [c]ourt finds that these funds were a loan to Bobby and that they were not a gift. However, [Mary] has not requested or demanded payment upon the loan and she will only expect payment when Bobby decides that his circumstances are convenient for him to pay.

Thus, it is clear that the chancellor considered the loan from Mary to Bobby in his distribution of the marital home.

¶26. Finally, Bobby argues that the chancellor erred by refusing to consider money that Bobby spent to repair damage to the marital home, purportedly caused by April, after April vacated the home. However, the chancellor noted Bobby's claim, but ultimately found that "April and Bobby did not unreasonably expend, withdraw[,] or otherwise dispose of the marital assets."

¶27. After reviewing the record and the chancellor's findings, we find that the chancellor acted well within his discretion in applying the *Ferguson* factors and dividing the marital home. Accordingly, this issue is without merit.

### II. Whether the chancellor erred when he set the payment schedule for equitable distribution and amended child support.

¶28. Finally, Bobby argues that the chancellor's payment schedule for the equitable distribution of the marital property and the amended child support was unreasonable,

12

erroneous, and not supported by the evidence. As noted above, Bobby was ordered to pay April $181,326 in equitable distribution, to be paid in three payments: $50,000 on June 1, 2013; $50,000 on September 1, 2013; and $81,326 on February 1, 2014. Likewise, the chancellor found that Bobby owed $27,354 in amended child support and ordered Bobby to pay April the amended child support in two equal installments of $13,677, to be paid on March 1, 2013, and April 1, 2013. Bobby asserts that the chancellor's ruling "effectively requires Bobby to pay the sum of $208,680 in [a] period of less than one year, even though . . . [his] adjusted gross income is $5,291.10 per month and his assets are not easily liquidated."

¶29. In the order denying Bobby's motion for a new trial or to alter or amend the judgment, the chancellor addressed Bobby's claim that the payment schedule was unreasonable, noting: "Time is a relevant factor. . . . Almost seven years have elapsed since this civil action was commenced[.]" The chancellor further noted:

> [April] and the litigant's two children were deprived of the amended child support from January, 2008, to January, 2012. [April] has been deprived of her use and benefit of the equitable distribution of the marital property while . . . [Bobby] has had the use and benefit of his equitable distribution of marital property. This [c]ourt found . . . that "Bobby has manifested a capability to acquire and/or accumulate property and funds for business ventures." It is reasonable to conclude that . . . [Bobby] can apply this same capability to pay his former wife amended child support and her equitable distribution of property.

Given the chancellor's finding that Bobby's gross monthly income was $5,291.10 and that Bobby received nearly $400,000 in marital property, we cannot conclude that the chancellor's decision was manifestly wrong or clearly erroneous and not supported by substantial evidence. Accordingly, this issue is without merit.

13

**CROSS-APPEAL**

**Whether the chancellor erred in failing to award April attorney's fees.**

¶30. On cross-appeal, April argues that the chancellor erred by failing to award her attorney's fees for the first trial, her first appeal, and the second trial. April asserts that the chancellor's failure to award attorney's fees amounted to an abuse of discretion and, as a result, she was required to "deplete assets awarded in equitable distribution and child support." We disagree and find that the chancellor did not abuse his discretion in failing to award attorney's fees.

¶31. The awarding of attorney's fees is "largely entrusted to the sound discretion of the chancellor." *Rhodes v. Rhodes*, 52 So. 3d 430, 449 (¶77) (Miss. Ct. App. 2011) (citing *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982)). Therefore, "[w]e are reluctant to disturb a chancellor's discretionary determination whether or not to award attorney's fees[.]" *Id.* Furthermore, "neither party is entitled to [attorney's] fees unless the requesting party has established the inability to pay." *Dorsey v. Dorsey*, 972 So. 2d 48, 51 (¶5) (Miss. Ct. App. 2008) (citation and internal quotation marks omitted).

¶32. Here, the chancellor heard testimony and received evidence from April, April's attorney, and Bobby's attorney as to the fees incurred by the respective parties. The chancellor found that April incurred attorney's fees of $9,246.54 for the first trial, $6,154.44 for the first appeal, and $17,018.75 for the second trial, for a total of $32,419.73. However, the chancellor found that April failed to demonstrate her inability to pay her attorney's fees. We find nothing in the record to contradict this finding; thus, we do not find that the chancellor abused his discretion in denying April attorney's fees and costs.

14

¶33.   April also asks this Court to award her attorney's fees for her defense of this appeal. We have "generally awarded attorney's fees on appeal in the amount of one-half of what was awarded in the lower court." *Lauro v. Lauro*, 924 So. 2d 584, 592 (¶33) (Miss. Ct. App. 2006).   However, "[t]he award of attorney's fees is based on necessity rather than entitlement." *Carroll v. Carroll*, 98 So. 3d 476, 483 (¶26) (Miss. Ct. App. 2012).  Here, the chancellor found that April failed to meet her burden by demonstrating her inability to pay her attorney's fees; likewise, we decline to award her attorney's fees on appeal. Accordingly, this issue is without merit.

¶34.   **THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT IS AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL.  ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND THE APPELLEE/CROSS-APPELLANT.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.  GRIFFIS, P.J., NOT PARTICIPATING.**