# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00186-COA

**MICHAEL DEWAYNE MANOR, SR.**                                    **APPELLANT**

**v.**

**PAMELA LANETTE MANOR**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/19/2023 |
| TRIAL JUDGE: | HON. LAWRENCE PRIMEAUX |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | KENNETH DUSTIN MARKHAM |
| ATTORNEY FOR APPELLEE: | KATHRYN RAE McNAIR |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 07/30/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. Michael Manor and Pamela Manor were married on March 27, 1996, and had three children. The parties separated in 2021. At that time, all three children were emancipated by age. The parties agreed to a divorce based on irreconcilable differences and reserved the issues of marital distribution of property, alimony, attorney's fees, and any unpaid temporary child support and alimony for the chancellor to decide. After a trial, the chancellor resolved all issues left outstanding. Michael appeals, claiming the chancellor erred in the distribution of sixty percent of the marital estate to Pamela and erred in the award of attorney's fees to Pamela. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2. Michael and Pamela were married on March 27, 1996. During the course of the marriage, the parties lived at 2071 Alamucha Whynot Road in Toomsuba, Mississippi. Michael worked for Rowan Offshore for most of the marriage, which required him to be away from home. At first, his employment required him to work fourteen days on and then have fourteen days off. Later, he worked twenty-eight days on and would have twenty-eight days off. Michael admits that Pamela raised the children and ran the marital household. Pamela was a teaching assistant and a bus driver but made extra money selling farm animals and puppies. During the marriage, Michael and Pamela had three children. At the time of divorce, two of the children were past the age of emancipation. The youngest child turned twenty years old in June 2021, which was before the January 2023 trial of this case. Therefore, child support and child custody, while the subject of a temporary order during the early life of this case, are no longer issues in this case.

¶3. Michael and Pamela separated on February 1, 2021. On March 1, 2021, they filed a joint complaint of divorce on the ground of irreconcilable differences. However, on June 2, 2021, Pamela filed an amended counter-claim for divorce and alleged the grounds of habitual cruel and inhuman treatment and adultery. Further, she asked for custody of the only minor child of the parties and attorney's fees.

¶4. On the same day, Pamela filed a motion for temporary relief. The motion sought, among other requests, temporary alimony, custody of the minor child, reasonable child support, temporary use and possession of the marital home, and attorney's fees. The chancellor held a hearing on the motion and, after hearing testimony from Michael and

Pamela, granted Pamela custody of the minor child, child support in the amount of $521 per month, temporary alimony in the amount of $350 per month, and use and possession of the marital home, but the chancellor denied attorney's fees and set a conference for a determination of a trial date for August 20, 2021.

¶5. On December 14, 2021, Pamela filed a motion for contempt against Michael. The motion alleged that Michael had failed to pay the court-ordered child support and alimony and had not paid toward the college expenses of the minor child. The court entered a written order on March 3, 2022, finding Michael in contempt and ordering him to pay $1,882.27 for the unpaid child support, alimony, and college expenses. Also, the court ordered Michael to pay $500 in attorney's fees, and all payments were due within forty-five days from the date of the order.[1]

¶6. On September 30, 2022, the parties presented the court with a consent of divorce. The parties agreed to a divorce on the grounds of irreconcilable differences pursuant to Mississippi Code Annotated section 93-5-2 (Rev. 2021). The parties also agreed to reserve the following issues for the chancellor to decide:

A. Whether either party should pay alimony to the other party and if so, in what amount.
B. An equitable division of all marital assets of the parties.
C. Who should be ordered to pay the outstanding indebtedness of the parties.
D. Whether the Plaintiff should pay to Defendant unpaid sums from the Temporary Order, while it was expired from December 24, 2021

[1] On July 14, 2022, Pamela filed a second motion for contempt, again alleging noncompliance with the temporary order. Michael filed a written response admitting or denying each allegation. The chancellor did not enter a second order of contempt before the consent for divorce and trial of the matter.

through March 16, 2022.

E. The date of demarcation for the purpose of equitable division.

F. Which party shall have the exclusive use, possession, and ownership of the mar[ital] home of the parties hereto and who shall pay costs associated therewith, including, but not limited to, the mortgage, taxes, insurance, and the reasonable upkeep and maintenance thereon.

G. Whether either party shall pay the attorney's fees, costs, and court costs of the other party.

¶7. The case went to trial on January 3, 2023. Pamela and Michael both testified.[2] The chancellor issued his written opinion on January 5, 2023. In that opinion, the chancellor recounted the relevant testimony and conducted a thorough *Ferguson* analysis for making an equitable distribution of the property.[3] Ultimately, the chancellor ordered the following:

> The court concludes from its analysis of the *Ferguson* factors that equitable distribution is proper in this case, and should be accomplished by awarding Michael 40% of the marital estate and Pamela 60%[.]

The chancellor produced a chart with a detailed account of each marital asset, its value, and the recipient.

¶8. As for attorney's fees, the chancellor made a finding that Pamela's attorney "touched on the *McKee* factors" and "testified that her hourly rate" was "$200 an hour."[4] The chancellor found that the rate and fee were reasonable and ordered as follows:

> The court finds that Pamela does not have the ability to pay her own attorney's fees, and, therefore, an award of attorney's fees is appropriate in this case. The court has considered whether Pamela should b[e] required to liquidate some of her retirement funds to pay her attorney fees and concludes that she should

---

[2] In an effort to avoid repetition, the parties' testimony relevant to the issues on appeal will be recounted in the analysis section.

[3] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

[4] *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

4

not due to the discrepan[c]y between her award of retirement funds and Michael's. Instead, the court has awarded Pamela an additional $7,500 in equitable distribution, which the court finds to be a reasonable sum considering the issues in this case, its complexity, the skill and standing of her attorney, the customary fees charged for similar litigation in this district, and the time required to devote to the case.

¶9. Michael filed post-trial motions that the chancellor denied. On appeal, Michael asserts two issues: first, that the chancellor erred in awarding sixty percent of the marital property to Pamela and, second, that the chancellor erred in awarding Pamela attorney's fees.

**ANALYSIS**

¶10. "This Court's scope of review in domestic-relations matters is strictly limited." *Curry v. Frazier*, 119 So. 3d 362, 365 (¶8) (Miss. Ct. App. 2013) (quoting *Pritchard v. Pritchard*, 99 So. 3d 1174, 1177 (¶18) (Miss. Ct. App. 2012)). "[W]e will not disturb the factual findings of a chancellor when supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Gussio v. Gussio*, 371 So. 3d 734, 745 (¶20) (Miss. Ct. App. 2023) (citing *Briggs v. Hughes*, 316 So. 3d 193, 198 (¶20) (Miss. 2021)). "Questions of law are reviewed de novo." *Bolivar v. Bolivar*, 378 So. 3d 433, 437 (¶18) (Miss. Ct. App. 2024) (citing *Donaldson v. Cotton*, 336 So. 3d 1099, 1105 (¶14) (Miss. 2022)).

## I. Equitable Distribution

¶11. Michael asserts on appeal that the chancellor erred when he awarded Pamela sixty percent of the marital estate and Michael forty percent. Michael argues in support that the chancellor made erroneous factual determinations not supported by substantial evidence

5

when the chancellor conducted the equitable distribution analysis required by *Ferguson*, 639 So. 2d at 928. At the outset, it is important to recognize that "an equitable division of property does not necessarily mean an equal division of property." *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994). "[Equitable division] is committed to the discretion and conscience of the Court, having in mind all of the equities and other relevant facts and circumstances." *Id.* at 864 (quoting *Brown v. Brown*, 574 So. 2d 688, 691 (Miss. 1990)). "[T]he goal of the chancellor in a divorce case is to do equity." *Ferguson*, 639 So. 2d at 934. Again, however, the Mississippi Supreme Court has stated that "an equitable division of property does not necessarily mean an equal division of property." *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009) (citing *Chamblee*, 637 So. 2d at 864).

¶12. "Appellate courts look to the chancellor's application of the *Ferguson* factors when reviewing questions of equitable distribution." *Gregg v. Gregg*, 31 So. 3d 1277, 1280 (¶8) (Miss. Ct. App. 2010) (citing *Ferguson*, 639 So. 2d at 921). In *Ferguson*, the Mississippi Supreme Court set forth certain factors to be considered by chancellors to ensure equitable marital distribution. The *Ferguson* factors follow:

> (1) substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>  (a) Direct or indirect economic contribution to the acquisition of the property;
>  (b) Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
>  (c) Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets;
> (2) the degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by

6

agreement, decree or otherwise,

(3)     the market value and the emotional value the assets subject to distribution,

(4)     the value of assets brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

(5)     tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

(6)     the extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

(7)     the needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

(8)     any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928-29.

¶13.    Michael complains that the chancellor erred in making factual determinations as to several of the *Ferguson* factors. As a result of these alleged factual errors by the chancellor, it appears Michael wants this Court to place itself in the position of the chancellor and conduct a new *Ferguson* analysis. We decline to do so. In reviewing a chancellor's judgment, this Court analyzes only the chancellor's findings in applying the *Ferguson* factors. In other words, "we do not conduct a *Ferguson* analysis anew." *Dickerson v. Dickerson*, 34 So. 3d 637, 644 (¶24) (Miss. Ct. App. 2010) (citing *Goellner v. Goellner*, 11 So. 3d 1251, 1264-66 (¶¶45, 52) (Miss. Ct. App. 2009)). A review of the chancellor's written order clearly shows he conducted the proper legal analysis, made factual determinations based on the testimony of the parties, and reached a legal conclusion. Again, we "will not disturb the factual findings of a chancellor when supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard."

7

*Briggs*, 316 So. 3d at 198 (¶20). We address the individual factors Michael disputes; those not addressed were not raised as issues in this appeal.

### A. Substantial Contribution to Accumulation of Property

¶14. Michael complains about the first factor, stating the chancellor "erroneously took the position and opined" that "both parties contributed directly and indirectly to the accumulation of the marital estate." He supports that argument by reminding this Court that Pamela kept the children at home when they were young and that he was the only person who regularly worked outside the home. Michael misses the mark. Long gone are the days when homemakers were considered non-contributors to the accumulation of marital assets. In fact, when the supreme court held *Ferguson* as the new guideline for equitable distribution of marital property many years ago, the supreme court added a cautionary instruction in considering the new factors. "Additionally, homemaker contributions are not to be measured by a mechanical formula, but on the contribution to the economic and emotional well-being of the family unit." *Ferguson*, 639 So. 2d at 929. Further, our review of a chancellor's findings of facts is limited, and ample evidence supported the findings here. Pamela watched their children but also supported the family by watching other people's children. When their children were older, she went to work as a teaching assistant, drove a bus, and sold eggs, farm animals, and puppies. She worked part-time at a food truck as a cook. Michael readily admitted that Pamela handled most of the financial matters of the family. Further, the couple was married for twenty-five years, and within that span they started businesses, bought a home, raised all three children to adulthood, and paid off and incurred debt. It is quite

8

evident from the record that hard work and dedication to their family's well-being drove *both* parties to the accumulation of marital property.

¶15.     In Mississippi, there is "a general presumption that property acquired during a marriage constitutes marital property." *Allgood v. Allgood*, 62 So. 3d 443, 447 (¶12) (Miss. Ct. App. 2011).     The Mississippi Supreme Court has held that "assets acquired or accumulated during the course of a marriage other than assets attributable to a spouse's separate estate either prior to the marriage or outside the marriage" is marital property. *Id.* (citing *Hemsley v. Hemsley*, 639 So. 2d 909, 915 (Miss. 1994); *Ferguson*, 639 So. 2d at 928). Substantial evidence showed Pamela contributed to the accumulation of marital assets, either as a homemaker or working numerous jobs. She may not have made the amount of money Michael made at his jobs away from home, but she certainly contributed. The chancellor was not in error when he addressed this factor.

### B.     Degree of Expense

¶16.     Michael next asserts that "the court erroneously determined that there was no evidence to support a finding of the dissipation or waste of family assets." He cites no legal authority in support of this assertion. He points only to (1) testimony he provided at trial in which he stated he had "no idea where the funds went" and to (2) his own intent to pay off certain marital debt, especially the mortgage on the marital home after receiving a large sum of money.[5] Pamela testified in response to his assertion that she "never paid anything he didn't

---

[5]  Specifically, Michael's brief states that he "received a $35,000 bonus and a year's salary of $163,000 after getting laid off from his former employer . . . [, and] he planned to service some of the marital debt attached to the marital assets including a van, a tractor, and a zero turn lawn mower."

know about." This is the only evidence the chancellor had before him to determine if a dissipation of assets had occurred. This Court previously faced a similar situation where a husband alleged such a dissipation through his own testimony, which his wife rebutted. *Reynolds v. Reynolds*, 287 So. 3d 1019, 1026 (¶¶21-22) (Miss. Ct. App. 2019). However, the husband provided "no documentation" in support of his assertion, relying wholly on "his own testimony and nothing more." *Id.* at (¶22). Consequently, the chancellor did not "incorporate" this dissipation claim "into his *Ferguson* analysis." *Id.* On appeal, this Court found the chancellor was "well within his discretion in determining that no dissipation of assets occurred." *Id.*

¶17. Here, Michael relies on only his own testimony that he had "no idea" where a certain amount of funds had gone. That testimony was called into question when Pamela stated the following in her testimony:

> I paid the bills, but I never paid anything that he didn't know about. I never bought anything that he didn't know about. My notebook that my bill stuff was in stayed on our kitchen table at all times. There was never an opportunity where he couldn't see what bills were paid.

As *Reynolds* made clear, Michael had a duty to present the evidence of the dissipation of assets. *Id.* His vague and disputed statement before the chancellor is certainly not enough evidence for this Court to find that the chancellor's dissipation decision was manifestly wrong or clearly erroneous.

### C. Property Division

¶18. Michael also argues that the chancellor erred in determining Pamela "was running a

deficit for the purposes of equitable distribution" while he was "running a surplus."[6]  In so doing, he asserts that the equitable distribution of the marital estate was "without any foundational basis[.]"  Again, Michael cites no legal authority in support of this argument.  However, this *Ferguson* factor is quite clear in its purpose to determine "the extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties[.]"  *Ferguson*, 639 So. 2d at 928.  That is precisely the principle to which the chancellor adhered in his opinion.  Specifically, he acknowledged that while "[a]limony would be a conventional means of addressing" the deficit and surplus issue, it could be entirely "eliminated . . . by granting Pamela a larger portion of the marital estate in equitable distribution."  This Court notes that the chancellor carried out this factor just as it should be carried out—considering the equity of the case but working to promote eliminating "future friction" between the parties.  There was substantial evidence to support the chancellor's decision and legal rationale, and this Court cannot say that decision was clearly wrong.

### D.    Financial Needs of the Parties

¶19.    Finally, Michael argues against the chancellor's finding that "a portion of" Pamela's income was "uncertain."  Michael again cites no legal authority in support of this assertion.  This argument is constructed entirely of numerous cites to the record describing numerous jobs Pamela had during the course of their marriage, and Michael simply asserts that her

---

[6]  Regarding the deficit, the chancellor found that "[p]ursuant to Pamela's 8.05 financial statement, she has a net monthly income of $2,452.10 and monthly expenses of $3,536.10 [that] results in a deficit of $1,084.00."

11

income "should be identified as consistent, not uncertain." Once again, however, we must recognize that "appellate courts lack the authority to overrule a chancellor's property division and distribution absent a finding of manifest error." *Jenkins v. Jenkins*, 67 So. 3d 5, 12 (¶15) (Miss. Ct. App. 2011) (citing *Parker v. Parker*, 641 So. 2d 1133, 1137 (Miss. 1994)). It is clear that the chancellor considered every fact that Michael now cites and found in Pamela's favor. In fact, the chancellor even provided reasoning as to the finding, stating that Pamela's income "rel[ied] on the whims of pet owners, the production of her livestock, and the fluctuating price of eggs." This Court sees no clear error in the chancellor's finding that a portion of Pamela's income was "uncertain" because substantial evidence supported such a finding.

¶20. Michael also argues that Pamela should not have been entitled to his retirement funds. However, "[a]ssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." *Hemsley*, 639 So. 2d at 914. After a review of the record, we find the chancellor applied the *Ferguson* factors, made factual determinations based on the substantial evidence, and was not manifestly wrong in awarding Pamela sixty percent of the marital estate and Michael forty percent. We find no reversible error.

## II.    Attorney's Fees

¶21. Michael's second issue on appeal concerns the chancellor's award of attorney's fees to Pamela. The chancellor determined Michael should pay an "additional $7,500.00 in

equitable division to compensate her attorney's fees." To be clear, there was "no judgment against Michael for attorney's fees." Rather, that additional sum awarded to Pamela in the equitable distribution was to cover the attorney's fees. "With respect to the amount of attorney's fees, the decision to award attorney['s] fees in a divorce proceeding is left to the sound discretion of the chancellor[.]" *Gussio*, 371 So. 3d at 752-53 (¶53) (citing *Gilmer v. Gilmer*, 297 So. 3d 324, 340 (¶55) (Miss. Ct. App. 2020)); *see also Faerber v. Faerber*, 150 So. 3d 1000, 1009 (¶31) (Miss. Ct. App. 2014) ("The awarding of attorney's fees is largely entrusted to the sound discretion of the chancellor." (quoting *Rhodes v. Rhodes*, 52 So. 3d 430, 449 (¶77) (Miss. Ct. App. 2011)). "An award of attorney's fees must be supported by sufficient evidence for an accurate assessment of fees." *Watts v. Watts,* 99 So. 3d 751, 764 (¶39) (Miss. Ct. App. 2012).

¶22. Michael largely asserts that Pamela did not provide enough evidence to support her assertion that she was unable to pay her fees. Indeed, "neither party is entitled to attorney's fees unless the requesting party has established the inability to pay." *Faerber*, 150 So. 3d at 1009 (¶31) (quoting *Dorsey v. Dorsey*, 972 So. 2d 48, 51 (¶5) (Miss. Ct. App. 2008)). "The party seeking attorney's fees is charged with the burden of proving inability to pay." *Riley v. Riley*, 846 So. 2d 282, 287 (¶23) (Miss. Ct. App. 2003) (citing *Jones v. Starr*, 586 So. 2d 788, 792 (Miss. 1991)).

¶23. Pamela testified before the chancellor that she "d[id] not have the assets to pay the bill at this time" and wanted Michael "to help [her] pay the bills" attributed to her attorney. In addition, she submitted documentation of her financial statements and the attorney's billing

statements. This evidence is substantial and supports the chancellor's finding, and we leave "the assessment of a witness's credibility . . . to the chancellor." *Smith v. Orman*, 822 So. 2d 975, 978 (¶12) (Miss. Ct. App. 2002) (citing *Dunn v. Dunn*, 786 So. 2d 1045, 1049 (Miss. 2001)). Indeed, "[a] chancellor sitting as the finder of fact is in the best position to determine the veracity and credibility of a witness." *Davison v. Miss. Dep't of Hum. Servs.*, 938 So. 2d 912, 916 (¶10) (Miss. Ct. App. 2006) (citing *Owen v. Owen*, 928 So. 2d 156, 168 (¶35) (Miss. 2006)).

¶24. In assessing attorney's fees, this Court applies the following factors set out in *McKee*, 418 So. 2d at 767: the "relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case." *Id.* In this case, the chancellor's order, as relating to attorney's fees, stated the following:

> The court has considered whether Pamela should b[e] required to liquidate some of her retirement funds to pay her attorney fees and concludes that she should not due to the discrepancy between her award of retirement funds and Michael's. Instead, the court has awarded Pamela an additional $7,500 in equitable distribution, which the court finds to be a reasonable sum considering the issues in this case, its complexity, the skill and standing of her attorney, the customary fees charged for similar litigation in this district, and the time required to devote to the case.

The chancellor may not have mentioned the factors line by line, but the factors were certainly considered. We leave the decision of attorney's fees to the "sound discretion" of the chancellor, *Faerber*, 150 So. 3d at 1009 (¶31), and since evidence in the record showed

Pamela's inability to pay those fees, we affirm.

## CONCLUSION

¶25.    The chancellor conducted a *Ferguson* analysis, and substantial evidence supported the equitable distribution of marital property.  Further, the chancellor considered the *McKee* factors and found Pamela proved an inability to pay her attorney's fees, and we see no abuse of discretion.[7]

¶26.    **AFFIRMED.**

    **BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

    [7]  Pamela filed a motion for $5,886.75 in appellate attorney's fees along with a supporting affidavit and an itemized invoice.  After Michael filed a response in opposition, this Court entered an order passing Pamela's motion for consideration with the merits of the appeal.

    As previously noted, the chancellor awarded Pamela attorney's fees after finding that she was unable to pay them.  *See Tatum v. Tatum*, 105 So. 3d 1141, 1144 (¶9) (Miss. Ct. App. 2012) (citing *Gray v. Gray*, 745 So. 2d 234, 239 (¶26) (Miss. 1999)).  "When a prevailing party requests attorneys' fees on appeal, typically, the Court awards attorney fees . . . in an amount equal to half the amount awarded at trial." *Gibson v. Bell*, 312 So. 3d 318, 325 (¶30) (Miss. 2020) (citing *Latham v. Latham*, 261 So. 3d 1110, 1115 (¶22) (Miss. 2019)).  However, "such an award may not be fair and equitable in all cases[.]" *Id.*  The prevailing party must support its request with affidavits and time records of the actual fees expended, and "only fees and expenses incurred in defense of the appeal may be awarded." *Cascio v. Cascio Invs. LLC*, 327 So. 3d 59, 79 (¶61) (Miss. 2021) (citing *Gibson*, 312 So. 3d at 325 (¶29)).  Additionally, the amount of requested attorney's fees must be reasonable.  Miss. R. Prof. Conduct 1.5(a).

    After due consideration, we grant Pamela's motion and award her the reasonable figure of $5,666.75 in attorney's fees.  That amount represents the attorney's fees that she requested reduced by $220 that her attorney billed for preparing and filing the motion for attorney's fees as those charges are not reasonably related to expenses incurred in defense of the appeal.